# CHARLESTON.

## STATE v. GEORGE UNDERWOOD.

Submitted November 8, 1921. Decided November 15, 1921.

1. WEAPONS—*Defendant Possessing Pistol Only to Examine at Invitation of Owner Not Guilty of Carrying a Pistol.*

   Upon the trial on an indictment for carrying a pistol, if it be shown that the defendant had the pistol in his possession only for the purpose of a casual examination, upon the invita-

tion of the owner, who has it at a place at which he has a right to carry it, and without any intention or purpose on the part of the defendant to control the use or possession of such weapon, he should be found not guilty. (p. 551).

2. CRIMINAL LAW—*On Trial for Carrying a Pistol, the State Should Not Show that Arresting Officer Had Warrants for Some of Defendant's Relatives for Other Offenses.*

Upon the trial on an indictment for carrying a pistol, it is improper to permit the state to prove that at the time the defendant was arrested upon the charge, the officer who arrested him had warrants for some of his relatives for other offenses. (p. 552).

Error to Circuit Court, Nicholas County.

George Underwood was convicted of carrying a pistol, and he brings error.

*Reversed and remanded.*

*Brown, Wolverton & Ayers,* for plaintiff in error.

*E. T. England,* Attorney General and *R. A. Blessing,* Assistant Attorney General, for the State.

RITZ, PRESIDENT:

Plaintiff in error, George Underwood, was indicted, tried and convicted in the circuit court of Nicholas county for carrying a pistol, and by this writ of error he seeks to reverse the judgment of conviction against him.

The facts proved by the State are that just prior to the time of Underwood's arrest, one of his nephews, a young man by the name of Ward, had been killed, and on the day of the arrest he accompanied the remains of this nephew from a hospital at Richwood where he died to his home at Tioga. It seems that there was some feeling between the relatives of the dead boy and the relatives of the man charged with the killing. At any rate, a deputy sheriff of the county had a peace warrant for the arrest of Underwood. When the train, upon which Underwood was a passenger, arrived at Tioga he and another nephew got off and accompanied the remains of the dead boy to his home about a mile from the station, and there remained until sometime in the afternoon, when they went to the home of Underwood's sister, a Mrs. Ward,

the mother of the young man who was accompanying Underwood. While there the sheriff and two of his deputies came for the purpose of placing Underwood and the nephew who had accompanied him to Tioga under arrest upon the peace warrant. The deputy sheriff who was leading the party testifies that he knocked at the door, and receiving no response opened it and walked in; that when he got inside he observed Underwood going into an adjoining room, at the same time pulling his pistol from his hip pocket; that he immediately covered Underwood with his pistol, observing which, Underwood dropped his weapon into a flour sack; that he at once went into the room and recovered the pistol from this receptacle and it was produced upon the trial of the case. Underwood admits that he had the pistol in his possession, and that he dropped it into the flour sack, but he denies that he ever had in his hip pocket, or ever attempted to draw it on the deputy sheriff. His defense is that after he and his nephew came to the house of Mrs. Ward they sat down in the living room with the other members of the family, consisting of Mrs. Ward, her married daughter, and another son, and that while in conversation the Ward boy who had accompanied him, and who had been in the military service of the Government in France, remarked that he would show him a real gun; that Ward thereupon got up, unlocked the dresser drawer, and took from it the pistol which Underwood had at the time the officers entered; that the boy handed it to him, and he was simply looking at it at the time of the entrance of the officers, and that he got up and attempted to dispose of it in the adjoining room for the reason that he knew there were suspicions of trouble, and he. did not want anyone to see any fire arms in the possession of any of the family at that time; that he did not at that time even know that the parties who were coming were officers. In this statement he is corroborated by his nephew who claims to have handed him the pistol, and by his niece who was present at the time. His sister, who was also in the room at the time, was not produced as a witness, it being suggested that she was too ill to attend the trial; and another nephew who was present in the room, and who was introduced as a witness,

stated that he knew nothing about it; that he was sick in bed, and did not recollect of waking up until the officers came into the room and aroused him.    On this state of the evidence the defendant requested the court to instruct the jury that if they believed that he received the pistol only for the purpose of incidental examination, without any intent to carry it or retain the possession of it, that he was not guilty under the law, which instruction the court refused to give, and this action of the court is the basis of the principal assignment of error.

The defendant contends that he would not be guilty of an offense under the statute if at the home of another he had in his possession a pistol simply for the purpose of examination, as he contends was the case here, without any intention of carrying it or retaining or having the possession or control of it; while the State contends that his intent is entirely immaterial; that if he had a pistol in his possession, with however innocent an intent, at a place other than his own home, he is guilty of an offense.    If the intent in a case like this is not material, and if the mere possession of the weapon under any circumstances is sufficient to establish the offense, then one would be guilty if he carried a pistol, or had a pistol upon his person without knowledge that it was there.    Certainly no one would contend for a conviction under such circumstances.    The act inveighed against by this statute is carrying about the person a dangerous and deadly weapon. The manifest purpose of the act was to prevent the many casualties arising from the promiscous possession of such weapons, not only those arising from the deliberate use thereof, but from their accidental discharge as well.    On this occasion Underwood's  nephew Ward was at his own house, and under the law had an undoubted right to have the weapon in his possession.    If the jury believe that Underwood simply took this weapon into his possession at Ward's invitation for the purpose of looking at it, it being what his nephew described as a real gun, is he guilty of the offense interdicted by the law?    It seems to us that this statute contemplates some possession of the weapon more or less permanent in its character, and not simply a possession for

such a casual purpose as was attempted to be shown here — in other words, a possession of the weapon indicating an intention to control its use for at least a short time.    We do not mean that the intention must exist to use it for any unlawful purpose.    If the jury come to  the conclusion that the party who has the weapon in his possession has it with the intention to control its use for any length of time, no matter what the use may be, then he would be guilty.    If, however, his possession of it is under the direction of the owner, at the owner's home, and simply for the purpose of permitting the owner to gratify his pride in the exhibition of a weapon of which he is particularly proud, as is contended by Underwood in this case, there would be no offense under this statute. We have been able to find few adjudicated cases having any direct bearing upon the question involved here.    A very similar question did arise in the case of *Jackson* v. *The State*, 12 Ga. App. 427, and the court came to the same conclusion in that case that we have reached in this.    There is also some discussion of the construction to be placed on such statutes as this in the case of *Strickland* v. *The State of Georgia*, 137 Ga. 1, 72 S. E. 260, 36 L. R. A. (N. S.) 115.

We do not want to be understood as saying that the contention of Underwood in this case is necessarily true.    The fact that he carried this weapon into the kitchen and attempted to secrete it in a flour sack, together with the evidence introduced by the State to show  the character of his possession, makes it a question to be determined by the  jury under proper instructions.    The court, however, gave an instruction on motion of the State which in effect excluded from the jury's consideration Underwood's defense, and refused to give to the jury an instruction which required them  to pass upon that defense. .

The defendant also insists that the trial court erred  in the admission of certain evidence over his objection.    The sheriff was permitted to testify over the objection of the defendant that on the occasion of Underwood's arrest he had peace warrants for several other Underwoods, relatives of the defendant.    This evidence could have no purpose in this case, unless it was to show that Underwood belonged to a

family whose disposition was generally bad.    This is not
the kind of evidence to be introduced upon the trial of such
an issue as was presented to the jury here.    Whether Under-
wood's relatives were good or bad people was not material, and
the court should not have admitted the evidence.

For the errors pointed out above, we reverse the judgment,
set aside the verdict of the jury, and remand the case for a
new trial.                              *Reversed and remanded.*