# CHARLESTON.

## STATE *v*. EARL EDGELL.

Submitted May 22, 1923.   Decided June 5, 1923.

1. INTOXICATING LIQUORS—*Instruction on Unlawful Possession of Moonshine Still Held Erroneous as Ignoring Felonious Purpose.*

   In the trial of one charged with unlawfully and feloniously owning, possessing, maintaining and having an interest in a "moonshine still," contrary to sec. 37, ch. 32-A, Barnes' Code, 1923, an instruction to the effect that if the jury believe beyond a reasonable doubt that the defendant, and another indicted jointly with him, "had in his or their joint possession the moonshine still introduced in evidence, then the jury shall find the defendant guilty as charged in the indictment" is erroneous and ground for reversal. (p. 202).

2. CRIMINAL LAW—*Instruction on Unlawful Possession of Moonshine Still Invading Province of Jury Held Erroneous.*

   Such an insturction, where the manual possession of the still is conceded, is peremptory, and it ignores the circumstance whether or not defendant had the still in his possession with a felonious purpose, that being a question for the jury to decide along with the other facts and circumstances of the case. (p. 202).

3. SAME—*Instruction that Defendant Should be Found Guilty Beyond a Reasonable Doubt Should be Given on a Request, Unless Covered by Given Instructions.*

   An instruction on the subject of the legal requirement of unanimity of the jury in the finding of a verdict, which, if given, would advise the jury that, if any juror, after due consideration of the evidence and consultation with his fellows, has reasonable doubt of the guilt of the accussed in a criminal case, it is his duty not to surrender his own con-

victions, simply because the other jurors are of a different opinion, is correct, and should be given upon request, unless its subject is covered by some other instruction given in the case. (p. 208).

4. SAME—*Given Instructions Held not to Cover Instruction That Defendant Must be Found Guilty Beyond Reasonable Doubt.*

The subject matter of the instruction so requested is not substantially covered by another which is addressed to the jury as a unit in the following language:

> "The Court instructs the jury that the presumption of innocence is not a mere form, to be disregarded by the jury at pleasure, but it is an essential and substantial part of the law of the land, and binding on the jury in this case; and it is the duty of the jury to give the defendant in this case the full benefit of the presumption, and to acquit the defendant unless they feel compelled to find him guilty, as charged, by the law of the land and the evidence in this case, convincing them of his guilt, as charged, beyond all reasonable doubt." (p. 208).

5. INTOXICATING LIQUORS—*Ownership not Necessary Element of Unlawful Possession of Moonshine Still.*

Ownership of or the right to control the moonshine still in question is not a necessary element of the guilt of one charged with its unlawful possession. (p. 209).

6. CRIMINAL LAW—*Remark by Court in Hearing of Jury Panel, in Discharging Acquitted Defendant, That in its Opinion Defendant was Guilty, Held Prejudicial to Jointly Indicted Defendant to be Tried.*

Under the circumstances disclosed in this case, where one is indicted jointly with another for a joint offense, and the other is tried first and acquitted, it is error prejudicial to the defendant for the trial court, in the presence and hearing of certain jurors later empaneled as members of the jury to try defendant, to make the following statement while discharging the one so jointly indicted: (p. 210).

> "Wetherholt, by the grace of the jury, you have been found not guilty, but, Wetherholt, let me say to you, in my opinion you are as guilty as sin."

Error to Circuit Court, Randolph County.

Earle Edgell was convicted of unlawfully and feloniously owning, operating, possessing, and maintaining, and having an interest in a certain mechanism, device, and apparatus

for the manufacture of intoxicating liquors commonly known as a ''moonshine still,'' and he brings error.

                                   *Reversed and Remanded.*

*W. B. & E. L. Maxwell,* for plaintiff in error.

*E. T. England, Attorney General* and *R. Dennis Steed, Assistant Attorney General,* for the State.

MEREDITH, JUDGE:

Defendant seeks to reverse the judgment of the circuit court of Randolph County by which he was convicted and sentenced on the charge of unlawfully and feloniously owning, operating, possessing and maintaining and having an interest in a certain mechanism, device and apparatus for the manufacture of intoxicating liquors, commonly known as a ''moonshine still'', against the peace and dignity of the state.

He relies for error upon: (1) The overruling of defendant's motion to set aside the verdict and grant a new trial on the ground that the verdict was contrary to the law and the evidence; (2) The giving of state's instruction No. 1; (3) A statement of the court made during the course of defendant's trial relative to defendant's ''possession'' of the moonshine still in controversy; (4) The refusal of his instructions Nos. 3, 5, and 6; and (5) Certain remarks of the trial court made in the presence and hearing of certain jurors afterwards members of the panel from which the jury which tried defendant was selected. All of these grounds are of sufficient importance to warrant some consideration.

First, as to the evidence. The evidence for the state consists of the testimony of two members of the Department of Public Safety, Clyde Hissem and Herbert Swiger. These officers were stationed at Elkins, Randolph County, and on or about August 3, 1922, while traveling from Ellamore to their station at Elkins, they discovered, about a mile beyond Ellamore, a deserted automobile parked along the side of the road. The door of the car being open, and the spot being somewhat secluded and hidden by woods, the suspicions of the officers were aroused. They therefore stopped their car

at a point about 100 yards beyond the suspected automobile and returned to see what they could find. They located tracks leading into the woods; these they followed for a short distance and then hid behind some bushes to await developments. They were rewarded by soon seeing the defendant and one, Roy Wetherholt, approaching with the component parts of a still. Wetherholt was carrying the "pot and stand", defendant carried the "coil and tub". Both were immediately placed under arrest, and were later jointly indicted upon the charge indicated in the opening paragraph of this opinion. Wetherholt elected to be tried separately, and was acquitted on the day before defendant was tried and convicted. The evidence shows that one of the officers followed the path into the woods and found the place where the still had been set up, but found no evidence of liquor having been made there; both officers testified, however, that the still was in shape to operate when it was seized.

The defense offered was to the effect that Wetherholt had discovered the still in question while picking blackberries several days before his arrest, and had determined at that time to later return for it, and sell it as junk to a dealer at Ellamore, and that it was while he was in the act of conveying it to Ellamore for that purpose that he was apprehended. Defendant says that he knew nothing of the still until a few minutes before his arrest. He was working at Gale, and on the day in question had gone to Ellamore to purchase some creoline for a Delco plant belonging to his employers. On his return he chanced to meet Wetherholt, who was going up that way in a car and who offered to take defendant along. The invitation was accepted, and they rode together about a mile to the point where defendant would turn off on his way to Gale, at which place Wetherholt suggested that they ride further on the same road to see how the car would run. Defendant consented to ride a short distance. They then drove a mile or more, turned around and returned to the place where the officers found the car. Then Wetherholt stated that he had "to go down in the brush" and asked defendant to "come on and go along". Nothing was said

about getting the still, for the reason, as Wetherholt testified, that he was afraid defendant would not go for that purpose. Defendant asked no questions, and, in ignorance of their purpose, followed his companion to the still.   Wetherholt picked it up and started towards the car.   The underbrush was somewhat dense, however, and one piece of the apparatus caught upon a piece of laurel and fell to the ground. At the suggestion of Wetherholt, perhaps, defendant picked up the fallen piece, and it was in this situation that the officers found them.   It will thus be seen that the physical facts are not in much doubt.   The inference that the officers drew, of course, was that they had captured a couple of "moonshiners" in the act of changing the scene of their operations, with their equipment in their possession and control.   The defense is that while the still was in their manual possession, defendant was in fact innocent of any intended wrong-doing, merely helping Wetherholt carry a still which he had found in the woods to a junk dealer, and that he was not in any sense guilty of unlawfully owning, possessing, maintaining or having an interest in a "moonshine still."

If such a state of facts were properly presented to the jury, the latter would of course be free to draw its own conclusions, and we could not disturb its findings.   But, defendant has assigned several reasons why he thinks the facts were not properly submitted to the jury.   Some of them involve a consideration of the state's and defendant's theory of the facts; that is why we have reviewed the evidence in some detail.   Other assignments, as shown, involve extrinsic matters.   All of the assignments will now be considered.

State's instruction No. 1, objected to but given, was in the following language:

> "The Court instructs the jury that it is a violation of the laws of this state for any person to have in his possession any mechanism, apparatus or device for the manufacture of intoxicating liquors, commonly known as a 'moonshine still' or that is capable of such use.   And if the jury believe from the evidence in this case beyond a reasonable doubt that the defendant Earle Edgell, by himself, or to-

gether with Roy Wetherholt or any other person, had. in his or their joint possession the moonshine still introduced in evidence, then the jury shall find the defendant, Earle Edgell, guilty as charged in the indictment.''

The theories of the state and of the defendant, so far as the evidence is concerned, are brought to an issue in this instruction. It also involves a determination of the meaning of sec. 37, ch. 32-A, Barnes' Code, 1923, as applied to the facts of this case. Both the indictment and the instruction were based on that section. It reads in part as follows:

''It shall be unlawful for any person to own, operate, maintain or have in his possession, or any interest in, any apparatus for the manufacture of intoxicating liquors, commonly known as 'moonshine still', or any device of like kind or character. For the purposes of this act, any mechanism, apparatus or device that is kept or maintained in any desert, secluded, hidden, secret or solitary place, away from the observation of the general public, or in any building, dwelling house or other place, for the purpose of distilling, making or manufacturing intoxicating liquors, or which by any process of evaporation, separates alcoholic liquor from grain, molasses, fruit or any other fermented substance, or that is capable of any such use, shall be taken and deemed to be a 'moonshine still'; and the owner or operator of any such 'moonshine still' shall be deemed a 'moonshiner'. Any person owning, operating, maintaining or having in his possession, or having any interest in any 'moonshine still', shall be guilty of a felony, and upon conviction thereof shall be fined not less than three hundred dollars nor more than one thousand dollars, and be confined in the penitentiary not less than two nor more than five years. Any person who aids or abets in the operation or maintenance of any 'moonshine still' shall be guilty of a felony, and upon conviction thereof shall be fined not less than two hundred dollars nor more than five hundred dollars, and confined in the penitentiary not less than one nor more than three years.''

This statute is obviously inclusive in its application, and

drastic in its penalties. It was so intended. By it the own-
ing, maintaining, possessing or having an interest in a moon-
shine still constitutes a felony. As was shown by Judge
POFFENBARGER in *State* v. *Lanetovich,* 91 W. Va. 510, 113 S.
E. 903, its purpose was to eliminate defenses founded on
artifice and technicalities of little substance, and we have
no desire to restrict its scope.

We have stated that the theories of the parties on the evi-
dence are brought to an issue in the above instruction. That
is true in this way. There being nothing in the evidence to
indicate any ownership or maintenance of the still, the state
rested its case upon proof of defendant's possession of the
apparatus. To a certain extent this was scarcely denied.
Defendant was caught with part of the still in his hands, so,
denial of manual control was scarcely in order. To overcome
this proof, however, counsel for defendant take this position.
They say that notwithstanding the fact that defendant was
arrested with part of the still in his hands, nevertheless that
mere "possession" without proof of the unlawful intention
to manufacture moonshine liquor is not the unlawful posses-
sion contemplated by the act, and that the jury should have
been instructed that this intention is an essential element
of guilt under the law. This, in fact, was the substance of
defendant's instruction No. 5, refused. We will consider
state's instruction No. 1 in the light of these arguments. In
view of an unusual circumstance in this case, however, its
language cannot be considered alone. It was not the only
indication of the court's view of the law applicable to the
situation. By defendant's assignment of error which we have
numbered "2", our intention is directed to a ruling of the
court during the cross-examination of officer Hissem. Counsel
for defense asked this question:

"In other words, the fact that they were carrying it out
through the woods, you take that to be possession?"

Counsel for State: "I object to that question."

The Court: "I do not see why this witness is called upon
to define possession. *That is certainly possession. He says
that he had it carrying it.*"

This statement of the court was excepted to.

From this we seem to have a situation where by a ruling on evidence, the court told the jury that the defendant had the still, or at least a part of it, in his possession, and by instruction stated that possession was an offense as charged in the indictment. Taken together, these two expressions of the court not only violated defendant's theory of the case that some intent to manufacture liquor should be evidenced for the jury's consideration, but, in our view, foreclosed a finding of not guilty. The court evidently considered that "possession" in the ordinary sense of manual custody was all that the statute contemplated, and that a peremptory instruction was justified. That makes it necessary for us to decide just how far the "intent" does enter into the offense created by sec. 37, ch. 32-A, Barnes' Code.

There is no doubt that in certain of its phrases it does say that any person who has an interest in or possession of a moonshine still shall be guilty of a felony. But does that mean that whosoever, under any circumstances, has within his physical control a moonshine still, without any intent to use it for the felonious purpose for which it is constructed, shall be so deemed? We do not think it so intends. In a preceding sentence, the same section defines a moonshine still. It says: "Any mechanism, apparatus or device kept or maintained in any desert, secluded, hidden, secret or solitary place, away from the observation of the general public, or in any building, dwelling house or other place, *for the purpose of distilling, making or manufacturing intoxicating liquors,* or which by any process of evaporation, separates alcoholic liquor from grain, molasses, fruit or any other fermented substance, or that is capable of any such use, shall be taken and deemed to be a 'moonshine still'; and the owner or operator of any such 'moonshine still' shall be deemed a 'moonshiner'."

Admittedly, the still which defendant had was capable of producing moonshine liquor. However, as was said in the Lanetovich decision, even strict construction of a statute requires a consideration of its spirit as well as the terms found

there.  See *State* v. *Blazovitch,* 88 W. Va. 612, 107 S. E. 291; .Endlich, Interpretation of Statutes, page 454.  The construction should be rational and such as carries out the obvious intention of the legislature.   Lewis' Sutherland Statutory Construction, Vol. II, page 974.  And it is not to be presumed that a statute, highly penal, is intended to alter the long established principles of justice and the law unless the intention so to do very clearly appears.  An ancient maxim in our criminal law is that the act and the intent must both concur to constitute the crime.  (*Actus non facit reum nisi mens sit rea.*)   Broom's Legal Maxims, (8th. ed.) page 256. The intent being an essential ingredient of most crimes, it has therefore become customary to expressly cover the state of mind in the statutes creating the offenses.  Thus the common use of the terms "maliciously", "fraudulently", "negligently", or "knowingly" in the statutes.  But while it is everywhere conceded that as a general principle of our criminal law there must be as an essential element of a criminal offense some blameworthy condition of mind, there are cases in which the words of the statute are sufficient to render criminal any act in contravention of those words, though done without any guilty knowledge and without any wrong intent. *State* v. *Cain,* 9 W. Va. 559; *State* v. *Denoon,* 31, W. Va. 122, 5 S. E. 315.

The manifest injustices to which such a construction of the statute here considered would lead, persuade us that it is not applicable in this case.  Were we to hold that mere physical possession of a contrivance suitable for making liquor, without any intent to use it for that purpose, would suffice to convict under the statute, would not the officer who seizes a still and carries it to the proper authorities be guilty under its terms?  We understand that the custodian of the Department of Archives and History has several such mechanisms on display in his museum.  We know of no law exempting him from prosecution, yet would he not be subject to punishment under the act, if we eliminate the element of intent? It seems to us that the spirit and terms of the statute demand that the jury consider whether the accused's possession of the

contrabrand machinery, be coupled with an unlawful intent or guilty purpose. "It is always for the jury to determine whether the prisoner had a criminal intention or not. They must take into their consideration all the surrounding facts and circumstances of the case; but they generally infer a man's intention from his acts and words." Odgers, The Common Law of England, page 112.

Such is the conclusion which we think accords with the principles of natural justice, common sense and the reported decisions. In *State* v. *Underwood,* 89 W. Va. 548, 109 S. E. 609, the defendant was tried and convicted for carrying a pistol, contrary to the provisions of sec. 7, ch. 148, Code. That section contains no provision to the effect that the carrying must be with an unlawful intent. The facts shown were that defendant was visiting at the home of a friend, and while there he had the weapon, the property of the friend, in his hands for the purpose of casual examination. It was not defendant's home, and he of course had no right to carry weapons while there. This court reversed the conviction, holding that such was not the possession contemplated by the act to constitute guilt.

In the case of *Regina* v. *Tolson,* 23 Q. B. D. 164, 58 L. J. M. C. 97, it was shown that the statute of 24 and 25 Vict. c. 100, s. 57 made it an offense for a married person to marry another during the life of a former husband or wife, with the exception that one whose husband or wife had been absent for seven years, and not known to be living, might marry again. Defendant married again, under the bona fide belief that her husband was dead. This was held to be a proper defense.

Other cases similar in principle might be cited, but they would serve only to cumulate the ideas we have attempted to explain and illustrate, and would uselessly encumber these pages. Corpus Juris, Vol. 16, Criminal Law, sec. 42-b, contains a representative summary of the principles involved, and shows that whether or not in a given case a statute is to be so construed that the offense created thereby is punishable without a consideration of the intent of the accused, is to

be determined upon an analysis of the subject matter of the prohibition as well as the language of the act.

For the reasons above, we think that since state's instruction No. 1 completely ignored the element of defendant's intention and eliminated it from the jury's consideration, it was in effect mandatory, erroneous and constituted ground for reversal of this case.

However, other errors also appear. Defendant assigns as error the remarks of the court as to the defendant's "possession" of the still. Those remarks we have already quoted and to some extent have considered. If they stood alone in the case, it may be that they would not constitute ground for reversal. They were, however, not advisedly spoken. If by them the court meant to say that the still was "certainly in defendant's manual possession", and they had been so understood, they would of course have been unobjectionable. But we fear that they were too easily susceptible of a different construction. We think that the jury might well have been led to believe by them that "certainly the defendant was in possession of a moonshine still as contemplated by the penal provisions of the statute", and was therefore punishable for a felony. For this reason their use in the case must be condemned and they should not be repeated.

Defendant complains of the refusal of his instructions Nos. 3, 5 and 6. No. 5, as heretofore stated, was to the effect that the jury should have been convinced beyond a reasonable doubt that defendant had possession of the still "for the manufacture of intoxicating liquors" in order to arrive at a verdict of guilty. This phase of the case has already been discussed. The instruction under the circumstances disclosed by the evidence was proper and should have been given.

Defendant's instruction No. 3 was as follows:

> "The Court instructs the jury that if any juror, after due consideration of the evidence, and consultation with his fellows, has reasonable doubt of the guilt of the accused, it is his duty not to surrender his own convictions simply because the other jurors are of a different opinion."

In other words, this instruction emphasized that the verdict should be a unanimous one. It is defended upon the authority of *State* v. *McKinney,* 88 W. Va. 400, 106 S. E. 894, where this court held, in considering a similar instruction, that, unless covered by another given, it should not be refused. There the majority of the court found that it was substantially covered by defendant's instruction No. 2, and that its refusal was consequently not erroneous. The state says it was similarly covered here by a defense instruction, also numbered 2, which was given, and which it says substantially corresponds to defendant's instruction No. 2 in the McKinney case. We have examined the record in that case and find that the two instructions in question are somewhat alike, but there is this vital distinction: In the McKinney case the jury are told that it "and each member thereof" must be persuaded of the guilt of the accused. The expression quoted shows the unanimity which the law requires in a verdict. These words are absent in defendant's instruction No. 2 in the case at bar. We think defendant's instruction No. 3 should have been given. See, *State* v. *James Wisman,* this day decided.

There are numerous reasons why defendant's instruction No. 6 was properly refused. It reads:

> "The court instructs the jury that possession means the owning or present right to deal with the property at pleasure and to exclude other persons from meddling with it, or having the power to control it."

That definition of "possession" is very probably correct as applied in the civil cases which defendant cites in support of the instruction. It is not proper, however, in the case at bar. Not only is it abstract, there being no application of certain of its principles to the facts at hand, but it distorts the law as to possession of moonshine stills. Ownership of and the having of an interest in a moonshine still are offenses distinct from the offense of possessing such a mechanism. It would be an unauthorized restriction of the prosecution of a crime of the latter type to compel the state to introduce

proof of the accused's ownership of the still, or of his right to control it; and we have no hesitancy in approving the refusal of the instruction.

The last assignment of error to which we·shall advert was the ·refusal of the court to set aside the verdict because of certain of its remarks uttered upon the discharge of Roy Wetherholt. It will be remembered that he was indicted jointly with defendant, and tried separately and acquitted on the day preceding defendant's trial. During Wetherholt's trial, those jurors not sitting in the case, but some of whom would naturally be selected upon the panel to try defendant, were excluded from the court room. As shown by the bill of exceptions signed by the court, however, it appears that certain of them who later became members of the jury which convicted defendant were in the room when Wetherholt was discharged from custody; and he was released with these remarks by the court:

"Wetherholt, by the grace of the jury, you have been found not guilty, but, Wetherholt, let me say to you, in my opinion you are as guilty as sin."

With this expression fresh in their memories, it seems that some of those selected to try defendant entered the jury box. Whatever may have been the inward satisfaction of the court in venturing his opinion of Wetherholt's guilt, it goes without saying that the remarks were useless and uncalled for, and had they been uttered during defendant's trial, they would clearly constitute reversible error under the ruling and reasons of this court recently set fourth in the case of *State* v. *McTier Austin,* decided this term. We cannot emphasize too strongly the care which trial courts should exercise in stating their opinions during the trials of cases. As was there pointed out, the most indirect indication of the court's feeling on a question of fact may invade the jury's province. The expression used here was of the most prejudicial character, and while it did not occur during the actual progress of the taking of the evidence in defendant's trial, we think it alone would constitute ground for reversal.

For these reasons, the judgment is reversed, the verdict set aside, and the case remanded for a new trial.

*Reversed and remanded.*