# CRIMINAL CASES.

## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## L. W. ANDERSON V. COMMONWEALTH.

### January 14, 1926.

1. CRIMINAL LAW—*Expression of Disapproval Before Jury of·Verdict in· Another Case—Jury Directed not to be Influenced by Judge's Remarks—Case at Bar.*—In the instant case, a prosecution for a violation of the prohibition act, during the trial of accused the court suspended the taking of evidence to receive the verdict of the jury in another liquor case; and when the verdict of "not guilty" was read, the judge, in the presence of the jury in the instant case, expressed disapproval of that verdict. Upon exception by counsel for accused in this case, the judge said to the jury in the instant case that they were not to be prejudiced by his remarks to the jury in the other case.

   *Held:* That, in view of the explanation made by the court, the accused could not have been possibly prejudiced by the statement made as to the verdict in the other case.

2. INTOXICATING LIQUOR—*Still Found on Premises Owned by Accused but Which he had Leased to Another—Instruction as to Guilty Knowledge of Accused as to What was Going on "on his Premises"—Case at Bar.*—In the instant case, a prosecution for manufacturing ardent spirits, a still was found on premises owned by accused but leased by him to another and over which accused had no control. The court instructed the jury that if accused assisted another or was interested with another in the violation of the law or had guilty knowledge of what was going on "on his premises" he was as guilty as if he had been violating the law alone.

   *Held:* That, as accused was not in actual possession or control of the premises, there was no *prima facie* presumption of his guilt and the instruction was therefore erroneous.

Error to a judgment of the Circuit Court of Eliza-
beth City county.

*Reversed.*

The opinion states the case.

*John H. Bowen,* for the plaintiff in error.

*John R. Saunders, Attorney General, Leon M. Bazile,
Assistant Attorney General* and *Lewis H. Machen,
Assistant Attorney General,* for the defendant in error.

WEST, J., delivered the opinion of the court.

L. W. Anderson was convicted under an indictment
charging him with unlawfully and feloniously manu-
facturing ardent spirits, and sentenced to jail for six
months and to pay a fine of $50.00. To that judgment
this writ of error was allowed.

The accused assigns as error the action of the court:
(a) In making certain remarks to the jury in another
case in the presence of the jury which tried his case;
(b) in giving a certain oral instruction to the jury;
and (c) in refusing to set aside the verdict of the jury
because contrary to the law and the evidence.

The evidence for the Commonwealth tended to
prove the following facts:

The accused, a retired chief petty officer of the U. S.
Navy, resided with his wife and her invalid mother
in a recently built dwelling house on his farm near
Hampton, Virginia. He purchased 240 acres of land
but had sold several acres to Alfred Olsen, upon which
the latter was erecting a residence, not far from the
Anderson home. There was a strip of marsh land
which separated the Olsen land from the land upon
which Anderson resided. Anderson leased another

portion of his farm, including a portion of the marsh land, to one Shuman, who had the arable portion of his land under cultivation.

On July 21, 1924, the officers, armed with a search warrant, made a search of Anderson's home and farm for ardent spirits. They found no ardent spirits in his dwelling or any of the outbuildings. A still was found in thickly grown up bushes near a ravine in that portion of the marsh which was included in the Shuman lease. The still was in operation and appeared to have been at that location for some time. It was bricked up off the ground and the undergrowth and marsh grass were trampled down until it was sloppy and muddy near the still. The distance between the accused's cow shed and the still was 110 feet, and the distance between the cow shed and his residence was forty feet. There was a path leading from the still to the edge of the marsh opposite Anderson's place and also a well defined path which led from the still to the side of the marsh next to Anderson's cow shed. When the officers came near the still they saw Beryl Tyndall running through the bushes in the direction of Olsen's new house. They shot at him but he made his escape and his whereabouts are unknown. Tyndall's automobile was found close to the marsh in the rear and in sight of Anderson's cow shed. The road leading into Anderson's premises to the point where the automobile was found runs close by the side of Anderson's residence. Anderson's dairy house is located between his dwelling house and his cow barn. The officers found at the still two five gallon kegs and three one gallon jugs full of whiskey; two full bags and a part of a bag of sugar; one full bag and a part of another bag of rye; one bag of cracked corn, four pounds of yeast and one whiskey gauge. They also found a 100 pound bag

of sugar in Anderson's dairy house and a lot of empty bottles behind the dairy. When the officers first saw Anderson he was approaching his residence from the rear and wore rubber boots which were muddy. He stated to one of the witnesses that the mud on his boots came from the cow shed where he had been fixing bedding. The witness looked into the cow shed and saw no mud, nor any evidence that manure had been forked out.

The accused, as a witness in his own behalf, testified that he leased the land on which the still was found to Shuman and had not been upon or had anything to do with it since; that he knew nothing about the still, had never seen it, and did not know it was being operated near his place; that he did not know Beryl Tyndall, and that Shuman had not been upon the place since the still was found; that on the morning the still was found he was cutting some marsh grass on his own property some distance from the place the still was found; that the bottles were an old collection of bottles which were brought from his former home in Portsmouth. Mrs. L. W. Anderson testified that she did not know liquor was being manufactured in the marsh and that nothing had occurred to arouse her suspicion that there was a still there. She also corroborated the statement of her husband as to the empty bottles and stated that the sugar in the dairy was for preserving purposes.

Several other witnesses testified that they were present when Anderson leased the land on which the still was located to Shuman; that the accused's reputation while a resident of the city of Portsmouth, from which he moved a few weeks before, was the very best, and that they had never heard of his being in any way connected with the manufacture or handling of

liquor.   They also corroborated Anderson's statement about the empty bottles.

[1] 1. During the trial of the accused the court suspended the taking of evidence to receive the verdict of the jury in the case of *Commonwealth* v. *Hawkins*, also charged with violating the prohibition law. When the verdict of "not guilty" was read, the judge, in the presence of the Anderson jury, said to the defendant: "Mrs. Hawkins, I don't see how the jury acquitted you unless it be that you are a woman; there was plenty of evidence to convict you.   Don't leave the court room until I see you further.   I want to look into the law and if there is any way whereby I can put you under bond not to violate the prohibition law I am going to do it."

Counsel for Anderson thereupon excepted to the statement of the court.   Whereupon the judge turned to the Anderson jury and said:   "Gentlemen of the jury, the remarks which I have just made referred to Mrs. Hawkins, are not in any way to influence your verdict in the trial of this case, for or against this defendant.   My remarks were based upon the evidence in that case."

Feeling sure there had been a flagrant miscarriage of justice in the Hawkins case, the court clearly had the right to express its disapproval of the verdict of the jury.   There is nothing in the language used to indicate that the court would have the verdict of any jury speak other than the truth.   The accused in the instant case was entitled to nothing more and had no right to complain.   In view of the explanation made by the court, accused could not possibly have been prejudiced by the statement made to the Hawkins jury.   *Landthrift* v. *State*, 140 Ala. 116-17, 37 So. 287; *People* v. *Threewitt*, 251 Ill. 513, 96 N. E. 242.

In *Landthrift* v. *State, supra,* when the jury in another case returned a verdict of "not guilty," and the trial judge, in the presence of the jury trying the *Landthrift Case,* said: "I will say to you, gentlemen, if it were not for the fact that I have another important case to try, I would discharge you for this verdict." Upon appeal the Supreme Court held that Landthrift was not prejudiced by the statement of the judge.

[2] 2. The oral instruction given by the court, of which complaint is made, reads as follows:

"The court further instructs the jury that under this indictment you may find the accused guilty of an attempt, or of aiding and abetting, or of being accessory in the violation of the prohibition law. If the accused assisted another, or was interested with another, in the violation of the law, or had guilty knowledge of what was going on on his premises, he is, under the law, as guilty as if he had been violating the law alone."

There might be a case in which this instruction would be a correct statement of the law. To make it a proper instruction in this case, the words, "or had guilty knowledge of what was going on on his premises," should have been left out. The uncontradicted evidence is that the still was found on the premises leased by and in the possession of Shuman, over which the accused had no control. Under the circumstances there is no *prima facie* presumption of guilt of the accused. For such a presumption to arise against the owner of the premises he must be in actual possession or control. *Hilton* v. *Commonwealth,* 136 Va. 721, 117 S. E. 840. Not being either in actual possession or control of the premises, the fact that he was the owner of the land was not sufficient, without further proof, to convict the accused of a violation of the prohibition law.

The granting of this instruction was prejudicial error.

Since, for error in the instruction, the judgment must be reversed and the case remanded for a new trial, we deem it improper to consider the third assignment of error which involves a discussion of the sufficiency of the evidence to support the verdict.

*Reversed.*