STATE OF NEBRASKA, APPELLEE, v. LARRY T. ESKEW, APPELLANT.

218 N. W. 2d 898

Filed June 6, 1974. No. 39343.

Thomas A. Wagoner, for appellant.

Clarence A. H. Meyer, Attorney General, and Steven C. Smith, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

McCOWN, J.

The defendant was convicted of burglary and adjudged an habitual criminal. He was sentenced to 20 years in the penal complex.

The facts which affect the critical issues in this case occurred before the jury was sworn and before any evidence was introduced. A brief chronological reference is advisable. The information was filed on August 2, 1973, and on September 12, 1973, trial was set for September 17, 1973. On September 13, 1973, the defendant filed a motion to order the prosecuting attorney to permit the defendant to inspect and copy items under the provisions of section 29-1912, R. S. Supp., 1972. The motion was framed in the statutory language. On September 17, 1973, the court, after hearing, directed the county attorney to furnish the addresses of certain witnesses and overruled the motion to produce. The complete written court notes on this issue read: "Motion to produce is overruled."

On September 17, 1973, the jurors for the case now before us were selected but were not then sworn. Instead, additional juries were selected from the same jury panel and at least one other criminal case, State v. Blue, was tried to a jury. That case involved a charge of driving while under the influence and the case was unrelated to the case now before this court. The defendant in the Blue case was acquitted. Later the jury asked to see the judge and prosecutor to explain the basis for its verdict. The court explained to the jury that since the case was over, he could tell them that Blue had had two previous convictions for driving while intoxicated, and had been found not guilty of auto theft at a previous jury term. He stated to the jurors that they probably misunderstood the instructions or had not read them carefully enough. The court pointed out there had been two possible ways to arrive at a guilty verdict. One was the breath test about which the jury was principally concerned, and the other was the testing by the officer. The court indicated that the prosecutor should have stressed the latter point in closing argument and stated that the misunderstanding was normal or par for a jury hearing its first case.

On September 20, 1973, the defendant in the case before us filed a motion to quash the jury panel. At the hearing on the motion the foregoing facts were brought out by testimony. The foreman of the Blue jury had been selected for the Eskew jury and five other Eskew jurors also sat in the Blue case. The foreman of the Blue jury testified that the discussion with the judge and prosecutor did not change his thinking about the Blue decision but "I think it might have changed the others, on the information we had." He also stated several jurors wished they had held out longer for a guilty verdict in the Blue case.

Following the hearing on the motion to quash the jury panel, the trial court overruled the motion but authorized additional voir dire of the selected jurors in the Eskew case. Defendant's counsel waived any further voir dire. The jury which had been previously selected was then sworn and proceeded to hear this case. The defendant was found guilty.

The defendant contends that the Nebraska criminal discovery statutes are remedial in character and that refusal of the benefits of section 29-1912, R. S. Supp., 1972, denied him a fair trial. Defendant also contends that the comments of the trial judge to the Blue jury after verdict prejudicially affected his right to a fair trial where the jury was selected from the same jury panel, and some of the jurors were common to both cases.

Section 29-1912, R. S. Supp., 1972, provides: "(1) When a defendant is charged with a felony, he may request the court, at any time after the filing of the indictment or information, to order the prosecuting attorney to permit the defendant to inspect and copy or photograph:

"(a) The defendant's statement, if any. For purposes of this subdivision statement shall mean a written statement made by the defendant and signed or other-

wise adopted or approved by him, or a stenographic, mechanical, electrical, or other recording, or a transcription thereof which is a substantially verbatim recital of an oral statement made by the defendant to an agent of the prosecution, state, or political subdivision thereof, and recorded contemporaneously with the making of such oral statement;

"(b)  The defendant's prior criminal record, if any;

"(c)  The defendant's recorded testimony before a grand jury;

"(d)  The names and addresses of witnesses on whose evidence the charge is based;

"(e)  The results and reports of physical or mental examinations, and of scientific tests, or experiments made in connection with the particular case, or copies thereof; and

"(f)  Documents, papers, books, accounts, letters, photographs, objects, or other tangible things of whatsoever kind or nature which could be used as evidence by the state.

"(2)  The court may issue such an order pursuant to the provisions of this section.  In the exercise of its judicial discretion the court shall consider among other things whether:

"(a)  The request is material to the preparation of the defense;

"(b)  The request is not made primarily for the purpose of harassing the prosecution or its witnesses;

"(c)  The request, if granted, would not unreasonably delay the trial of the offense and an earlier request by the defendant could not have reasonably been made;

"(d)  There is no substantial likelihood that the request, if granted, would preclude a just determination of the issues at the trial of the offense; or

"(e)  The request, if granted, would not result in the possibility of bodily harm to, or coercion of, witnesses.

"(3)  Whenever the court refuses to grant an order

pursuant to the provisions of this section, it shall render its findings in writing together with the facts upon which the findings are based.

"(4)   * * *."

Section 29-1916, R. S. Supp., 1972, provides that whenever the court issues an order pursuant to section 29-1912, R. S. Supp., 1972, its order may be conditioned by requiring the defendant to grant the prosecution like access to comparable items or information and shall be deemed to constitute a waiver of the defendant's privilege of self-incrimination for the purposes of the section.

The defendant's motion to produce was couched in the language of section 29-1912, R. S. Supp., 1972, and included all six subparagraphs of subsection (1). The trial court advised defense counsel that on the motion to produce he was going to have to be specific. In several instances the court inquired of defendant's counsel what specific information he wanted and was advised that counsel did not know what material the prosecution had, nor what specific items he was looking for. Nevertheless, in many instances the court failed to inquire of the county attorney whether there was any material of that particular kind in the possession of the prosecution.

The court inquired of the defendant's counsel as to whether the defendant gave a statement and the response was: "Not that I'm aware of, Your Honor." The county attorney was not asked whether or not the prosecution had any statement of the defendant in any of the forms described in section 29-1912 (1) (a), R. S. Supp., 1972. Virtually the same thing occurred with respect to the defendant's criminal record. Defense counsel, in response to a question from the court as to whether he had access to defendant's criminal record, said: "I know his criminal record. I don't know if they have anything else that I don't know about, Your

Honor." No inquiry was made of the county attorney as to whether he had furnished the defendant's prior criminal record to defendant's counsel or whether the defendant's prior criminal record was in the possession of the prosecution. Defendant's counsel responded in substantially the same fashion to questions from the court with respect to whether or not any physical or mental examinations of the defendant had been made by saying: "Not that I'm aware of, Your Honor." No questioning of the county attorney on this score was conducted. There is some confusion in the record as to what documents or reports were being referred to under subsection (1) (f). We shall assume that the county attorney's denial of possession of some indefinite kind of documents and reports was intended to be a denial of the existence of any of the items set out in that subsection.

The criminal discovery statutes are remedial in character and designed to meet modern standards for criminal justice. See, A B A Standards Relating to Discovery and Procedure Before Trial, § 1.2. At a hearing on a motion to produce, filed under the provisions of section 29-1912, R. S. Supp., 1972, it is necessary for the trial court to determine by inquiry of the prosecuting attorney whether or not the prosecution has any item of the classification and kind specifically designated in the statute and in the motion to produce. Any other course may effectively thwart the remedial purpose of the discovery statutes.

The importance of the factual determinations as to what items are subject to discovery and production under section 29-1912, R. S. Supp., 1972, is emphasized and spotlighted by subsection (3) of the statute, which provides: "Whenever the court refuses to grant an order pursuant to the provisions of this section, it shall render its findings in writing together with the facts upon which the findings are based." That language is

explicit and mandatory. It was not done here and the facts in the record do not support the denial. It must be presumed, under the circumstances here, that the error was prejudicial and resulted in the denial of a fair trial.

We turn now to the issues raised by the comments of the trial court to the jury in the case of State v. Blue. The comments were made to the Blue jury following the verdict. All parties were not present and no record was made of the proceeding. Six members of the Blue jury, including the foreman, were members of the jury in this case. A reasonable summary of the import of the trial court's comments to the Blue jury would be that the jury had made a mistake and that its verdict of acquittal was wrong.

Jurors, particularly inexperienced ones, are peculiarly sensitive to a judge's views and the revelation of his feelings toward the parties, counsel, or witnesses may influence the jury more than the evidence. See State v. Kimball, 176 N. W. 2d 864 (Iowa, 1970). Obviously, the court's remarks could not have had any effect in the Blue case but where the same jury panel continued, and six of the individual jurors served in both cases, the issue is whether or not the comments created an improper influence in this case. While it is appropriate for the trial court to thank jurors at the conclusion of a trial for their public service, such comments ordinarily should not include praise or criticism of their verdict. The reason for avoiding such comments at the conclusion of any trial is to avoid improper influence in other cases to which the jurors may be assigned. See, Commentary, A B A Standards Relating to Function of the Trial Judge, § 5.13; and A B A Standards Relating to Trial by Jury, § 5.6.

It is uncertain whether the grant and waiver of additional voir dire after the overruling of the motion to quash the jury panel could have been sufficient to

remedy the prejudice here. Nevertheless, in view of our previous determination with respect to the discovery statute, we shall conclude that the remarks and comments of the trial court were such that it may be assumed that the prejudice resulting therefrom is fatal to the validity of the trial here. See Pickerell v. Griffith, 238 Iowa 1151, 29 N. W. 2d 588.

The defendant's contention that he was improperly convicted upon the testimony of an accomplice is wholly rejected. The jury was properly instructed with respect to the testimony of the accomplice and this court adheres to its decision in Smith v. State, 169 Neb. 199, 99 N. W. 2d 8.

Issues respecting the excessiveness of bail bond are moot. No motion for reduction of any such bond was ever filed in this court.

The judgment of the District Court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

NEWTON, J., dissenting.

I cannot agree with the reversal of *this* case on either of the grounds advanced in the majority opinion.

With reference to the discovery motion, the record discloses that the court made careful inquiry in regard to each phase of the motion. I will discuss them in the order in which they appear in the motion and the majority opinion.

(1) It does not appear that any written or taped statement was given by the defendant and none was placed or offered in evidence. (2) Defendant's counsel stated he knew defendant's criminal record but wondered if the State had anything else. Two prior convictions were set out in Count II of the information. These were the only ones mentioned or introduced at the hearing on the habitual criminal count. Defendant's counsel was fully cognizant of these at all times.

(3) There was no grand jury investigation. (4) The names of the State's witnesses were endorsed on the information but the court ordered the State to give defendant's counsel the addresses of all witnesses. (5) There were no physical or mental examinations, scientific tests, or experiments. (6) There were no documents, papers, books, accounts, photographs, objects, or other tangible things which could be used as evidence except a letter or two thought to have been written by a witness. The court had previously authorized the taking of the depositions of all witnesses and stated that if there were such letters, defendant's counsel could obtain them when the depositions were taken.

Under the circumstances disclosed by the record, there was not an abuse of discretion on the part of the court, nor was any prejudice to defendant shown. Clearly there was no error, let alone error with prejudice.

In regard to comments made by the court in the presence of the jury panel, it appears that the Eskew jury was selected but not sworn at the time a previous jury sitting on a DWI case reported in with a verdict of not guilty. The court did not "castigate" this jury but stated that the man acquitted had two previous convictions for DWI and had, at the previous term, been acquitted of auto theft. The court also stated that the jury probably misunderstood the instructions given which was normal for a jury trying its first case. Members of the jury stated they had been dissatisfied with the breath test given the defendant and the court pointed out that they need not have relied only on the breath test but could have considered the tests made by the arresting officer. The jury foreman who testified still thought the defendant would have been acquitted, if the case were reconsidered, notwithstanding the court's remarks. The court then offered counsel in the present (Eskew) case the opportunity to inquire further on voir dire to which defendant's counsel re-

plied: "I'll waive any voir dire, Your Honor." The A B A Standards mentioned in the opinion of McCown, J., indicate that it is inadvisable for the court to praise or criticize the jury's verdict. This we can all agree is correct. Nevertheless, whether such comments require reversal depends on their nature and prejudicial effect in each particular instance. Perhaps examination of other decisions on this point will be helpful.

In Pickerell v. Griffith, 238 Iowa 1151, 29 N. W. 2d 588, the trial court made the following remarks directed at plaintiff's counsel: " 'Yes, *you better try this lawsuit like a lawyer would try it.* * * *

" 'Sustained. *Let's get down to the issues here.'* * * *

" '*The only persons involved here are the plaintiff and the defendant. We are trying this lawsuit. Confine yourself to the parties involved in the lawsuit.'* * * *

" '*Yes, you have gone over that Shultz business about six times.* He may answer again.' "

The remarks were held to be prejudicial.

In State v. Edgell, 94 W. Va. 198, 118 S. E. 144, defendant was indicted jointly with one Roy Wetherholt but separately tried. The court, in the presence of some of the Edgell jurors, remarked to Wetherholt on his acquittal that he was "as guilty as sin." The remarks were referable to Wetherholt's partner in crime, Edgell, and were held to be prejudicial.

In Milam v. State, 50 Okla. Cr. 439, 298 P. 898, during the progress of a trial a jury returned in another case with a verdict of acquittal and the court stated that in arriving at verdicts jurors should exercise common sense and reason in their deliberations. The court held the remarks were not prejudicial as the crimes were not similar and that the jury was not biased or prejudiced.

In Cabaniss v. City of Tuscaloosa, 20 Ala. App. 543, 104 So. 46, the court castigated jurors for not having

been able to agree on a verdict. The remarks were held to be without prejudice to the defendant although made in the presence of jurors sitting on his case.

In Anderson v. Commonwealth, 144 Va. 544, 131 S. E. 207, during prosecution of a liquor case a verdict was received in a similar type case. The court expressed disapproval of the not guilty verdict but admonished the jury that his remarks should not in any way influence its verdict. Held: Non-prejudicial.

In United States v. Kyle, 469 F. 2d 547 (D. C. Cir., 1972), cert. den., 409 U. S. 1117, 93 S. Ct. 920, 34 L. Ed. 2d 700, three jurors had sat on a case 2 days earlier which had been castigated by a different judge for rendering a not guilty verdict. The court held that there was no prejudice as the jurors had been questioned on voir dire in regard to whether they could render an impartial verdict and would acquit if not convinced of guilt beyond a reasonable doubt. It also appeared that the two cases were dissimilar, with different defendants, counsel, and judges.

In view of the general law on the subject as above outlined, it is difficult for me to jump to a conclusion that the jury was prejudiced in the case before us. Here the only criticism made was that the jury had failed to understand the instructions given, the two cases were dissimilar, there were different defendants and counsel, the defendant's counsel was given an opportunity for additional voir dire examination which he declined, and the court instructed that the jury could only convict if convinced of guilt beyond a reasonable doubt. Furthermore, the evidence was reasonably conclusive.