# CHARLESTON.

STATE v. J. T. MOORE.

Submitted February 20, 1924.   Decided March 4, 1924.

1. INTOXICATING LIQUORS—*Prohibition Statute Held Passed in Exercise of State's Police Power.*

   Section 37, chapter 32-A, Barnes' Code, 1923, one of the state's prohibition statutes, was passed in the exercise of the state's police power, and not under the authority of the Eighteenth Amendment to the Constitution of the United States. (p. 605).

2. CRIMINAL LAW—*Evidence Procured by Legal Search Held Admissible.*

   Police officers visited the home of defendant, believing that he was maintaining a moonshine still on his premises, but prior to entering the home, and before attempting to make a search of the premises, or restraining the defendant's liberty in any respect, they discovered that the search warrant authorizing the search had been left at the home of one of them. They refused to proceed with the search and arrest until the warrant was secured and read to the defendant, although upon his invitation they entered the house and conversed with him while waiting for one of their number to return with the warrant. Under such circumstances a still found in the defendant's basement by the officers, and their testimony in regard thereto is competent evidence against defendant, not having been secured as the result of an illegal search or arrest. (p. 606).

3. INTOXICATING LIQUORS— *Instruction Withdrawing Consideration of intent Held Erroneous.*

   In the trial of one charged with unlawfully and feloniously owning, possessing, maintaining and having an interest in a "moonshine still," contrary to sec. 37, ch. 32-A, Barnes' Code, 1923, where defendant's physical possession of the still is proved and not controverted by evidence, an instruction to the effect that possession by defendant of a moonshine still, or device capable of being used as a moonshine still, is sufficient proof of guilt is erroneous, as it withdraws from the jury's consideration the question of the defendant's intent, and practically directs the jury to find the defendant guilty. (p. 607).

Error to Circuit Court, Lewis County.

J. T. Moore was convicted of the unlawful possession of a moonshine still, and he brings error.

*Reversed and remanded.*

*W. W. Brannon* and *Edward A. Brannon,* for plaintiff in error.

*E. T. England,* Attorney General, *R. Dennis Steed,* Assistant Attorney General, *W. G. Brown,* State Prohibition Commissioner, *W. J. Smith,* Prosecuting Attorney, and *J. C. McWhorter,* for the State.

MEREDITH, PRESIDENT:

Defendant was convicted under an indictment charging him with unlawfully and feloniously owning, operating, maintaining, possessing and having an interest in a certain apparatus, mechanism and device for the manufacture of intoxicating liquors, commonly known as a moonshine still, against the peace and dignity of the state. He seeks a reversal of that judgment.

The evidence clearly shows that three police officers of the county in which defendant resided searched his house and premises, and found in the basement thereof, set up and ready for operation, an apparatus suitable for the distillation of liquor, and found also a quantity of cracked corn and mash, as well as a number of jars and other containers. Defendant offered no testimony to controvert the facts so proven, but relies for error upon:

(1)  The trial court's overruling of defendant's demurrer to the indictment;

(2)  The admission in evidence of the apparatus found by the officers in their search, and the testimony of the officers in regard thereto;

(3)  The trial court's refusal to instruct the jury to find defendant not guilty under the evidence; and,

(4)  The giving of state's instructions numbers 1 and 3. Other errors are assigned which are not necessary to be considered.

The first error assigned, which relates to the court's overruling of the demurrer to the indictment is predicated, according to defendant's brief, upon an alleged inconsistency between the statute upon which the indictment is founded (sec. 37, ch. 32-A, Barnes' Code, 1923) and the Eighteenth Amend-

ment to the United States Constitution. He argues in support thereof that all state legislation for the purpose of enforcing prohibition should be in pursuance of that Amendment, and that the statute of this state, above referred to, goes beyond that authority. The precise point argued is that while the Amendment only reaches the manufacturing, selling and transporting of liquor for *beverage purposes,* sec. 37, ch. 32-A of the Code contains no such limitation, but is broad enough to inhibit the maintenance of a "moonshine still" for other purposes. There is nothing in this contention. It is definitely settled by our decision in *State* v. *Henson,* 91 W. Va. 701, 114 S. E. 273, wherein we distinctly held that "our state prohibition laws were passed in the exercise of the state's police power, and are not under the authority of the Eighteenth Amendment to the Federal Constitution."

In support of the contention that the still and the testimony of the officers who signed it are improper evidence in this case, counsel for defendant urges that these officers entered defendant's home without a search warrant, arrested him and detained him until a search and seizure warrant and authority for his arrest was secured, and then searched his house, seized the contraband property and arrested him, all of which, it is argued, renders the acts of the officers illegal and the evidence secured thereby improper under the doctrine of *State* v. *Wills,* 91 W. Va. 659, 114 S. E. 261, and similar cases. There might be something in this argument if the record showed the facts to be as contended, but it does not. The evidence of the officers shows that they went to defendant's home at night for the purpose of searching it for liquors and mechanisms for the manufacture of liquors, kept or stored there contrary to law, under authority of a search warrant regularly issued, and which warrant they understood one of their number, White, had in his pocket. On arrival, however, having stated their purpose to defendant, White discovered that he had left the search warrant at his home in his other clothes. Upon this, the officers, still outside the house, desisted from taking any steps whatever either to apprehend the defendant or to search his premises, and White returned to his home, about three-fourths of a mile distant, for the warrant. The other

two, having decided to remain at the premises until White should arrive with the warrant, upon defendant's express invitation, entered the house and conversed with him. Upon White's return with the proper warrant, and not till then, did they make a search of defendant's premises. A fourth officer, Smith, became ill and had nothing to do with the search or arrest. He was not called as a witness; we therefore have taken no account of him in this narrative. As stated above, the mash and still were found in the basement. It in fact appears that defendant invited the officers to make a search without the warrant, but White refused to do this, deeming it advisable to be armed with the proper authority. When this case was presented to this court upon application for writ of error, the search warrant was not a part of the record. It has been since supplied, however, and seems to be regular in all respects. Upon this state of facts it is beyond cavil that defendant has nothing to complain of. The officers did absolutely nothing to interfere with defendant's freedom of action, nor did they take one step to investigate the premises until White returned with the warrant. All that they did was to enter defendant's home and engage in conversation with him for a short time, and this upon his special request. The search and seizure and the arrest were not improper, and the evidence secured thereby was in no sense incompetent.

Defendant's request for a peremptory instruction was based upon the alleged incompetency of the evidence adduced by the state. We have fully considered this phase of the case in the preceding paragraphs, and it is clear that the court's refusal of such instruction was proper.

While defendant objects to state's instructions numbers 1 and 3 in separate assignments of error, they are so related that they can logically be considered together. Instruction No. 1 reads:

> "The court instructs the jury, as a matter of law, that any mechanism, apparatus or device that is kept or maintained in any desert, secluded, hidden, secret or solitary place, away from the observation of the general public, or in any building, dwelling-house or other place,

for the purpose of distilling, making or manufacturing intoxicating liquors, which by any process of evaporation, separates alcoholic liquors from grain, molasses, fruit or any other fermented substance, or that is capable of any such use, is a 'moonshine still', and if the jury believe from the evidence, beyond a reasonable doubt that the defendant, in Lewis county, owned, operated, maintained or had in his possession, or had any interest in any moonshine still, as charged in the indictment they should find the defendant guilty as charged in the indictment.''

As the indictment in this case charged defendant with maintaining, possessing, and having an interest in a moonshine still ''for the manufacture of intoxicating liquors'', and as the instruction above quoted defines a moonshine still as being an apparatus kept under certain circumstances ''for the purpose of distilling, making or manufacturing liquors'', and directs the jury to consider whether the defendant owned, possessed or maintained a moonshine still as charged in the indictment, it is clear that the jury were sufficiently instructed to consider the motive, intent or purpose of the defendant in keeping the contraband property which was found on his premises. It is necessary that this element of intent be taken into account by the jury. We so decided in *State* v. *Edgell*, 94 W. Va. 198, 118 S. E. 144, the gist of which decision, so far as it affects the present case, appears in points 1 and 2 of the syllabus, as follows:

''1.   In the·trial of one charged with unlawfully and feloniously owning, possessing, maintaining and having an interest in a 'moonshine still', contrary to sec. 37, ch. 32-A, Barnes' Code, 1923, an instruction to the effect that, if the jury believe beyond a reasonable doubt that the defendant, and another indicted jointly with him, 'had in his or their joint possession the moonshine still introduced in evidence, then the jury shall find the defendant guilty as charged in the indictment', is erroneous and ground for reversal.

''2.   Such an instruction, where the manual possession of the still is conceded, is peremptory, and it ignores the circumstance whether or not defendant had the still in his possession with a felonious purpose; that being a

· 95 W. Va.

question for the jury to decide along with the other facts and circumstances of the case.''

In the opinion in that case we showed clearly that the mere physical possession of a ''moonshine still'' or ''mash'' is not sufficient to warrant a conviction under the statute. The intent must accompany the act, and, while it but repeats the argument of that opinion, if the intent or motive of the accused is not to be taken into account, is not the possession of the officer who seizes the still and carries it to the proper authorities sufficient to render him also guilty of the offense? The principle is obvious and is settled by the Edgell case.

Now while it is clear that instruction No. 1 fairly directs the jury to consider the intent of the defendant in connection with his possession of the still, thus meeting the requirements of the Edgell decision, it is equally plain that instruction No. 3 ignores the principles announced in that case. That instruction reads:

''The court further instructs the jury that, in order to convict the defendant, if the evidence otherwise justifies a conviction, it is not necessary for the state to show that the defendant had in his possession a moonshine still for the actual purpose of manufacturing intoxicating liquors; it is sufficient if the evidence shows beyond a reasonable doubt that the defendant had in his possession or maintained a moonshine still, or a mechanism, apparatus or device capable of being used as a moonshine still.''

Contradicting the charge of instruction No. 1 that the jury should consider whether defendant possessed or operated the still as charged in the indictment, that is, ''for the manufacture of intoxicating liquors'', etc., this instruction tells the jury that it is unnecessary to consider whether defendant had the still in his possession for that purpose. True, the expression ''actual purpose'' is used in the instruction, but we are able to see no distinction between defendant's ''purpose'' and his actual purpose. The instruction does just what we pointed out to be erroneous in the Edgell case, it omits the element of intent altogether, and plainly states that the mere

possession of an apparatus or mechanism capable of being used as a moonshine still is the gravamen of the offense.

As the state's evidence was not controverted by proof, defendant's possession of the still was, as in the Edgell case, practically conceded. Instruction No. 3, therefore, was in substance peremptory, and, contrary to the state's contention, distinctly prejudicial. The court might as well have directed the jury to find the defendant guilty, as that was the effect of the instruction.

The judgment must, therefore, be reversed and the case remanded.

*Reversed and remanded.*