STATE OF WEST VIRGINIA *v.* GEORGE HALLER

(No. 6940)

Submitted March 15, 1932. Decided March 22, 1932.

*Wm. T. George,* for plaintiff in error.

*Howard B. Lee,* Attorney General, *R. A. Blessing,* Assistant Attorney General, for the State.

LIVELY, JUDGE:

Convicted of owning, operating, etc., a moonshine still and sentenced to confinement in the penitentiary for five years, the defendant prosecutes error from the sentence, pronounced September 15, 1930.

There are two points of error alleged; first, the refusal to discharge defendant because three terms of court had passed since the finding of the indictment without trial; and, second, error in instructions.

Haller and one Phillips were jointly indicted for owning, operating, etc., a moonshine still, at the September term of court, 1927, at which term Haller appeared and had his case continued, the style of the case being recorded as *State* v. *George Haller*. At the January term, 1928, he again obtained a continuance, the case being styled as above. At the following April term, he failed to appear and forfeiture of his recognizant was noted on the record. At the September term, 1928, no order was entered. At the following January term, 1929, he appeared and secured a continuance. At the following May term, he and his co-indictee, Phillips, appeared by counsel and each moved discharge from the joint indictment against them on the ground that more than three terms had passed since the return of the indictment without trial, whereupon the state moved correction of the record, and the judge, after inspecting the record and ascertaining and finding that the joint indictment was the only one found against the defendants, the only one pending against them, that there were no separate indictments against either, then corrected the style of the case and made the record to show the true fact that all previous proceedings were had on that joint indictment alone. Defendant excepted to the entry of the order so correcting the record, and again had his case continued. He secured continuances at the September term, 1929, the January and April terms, 1930, and was brought to trial at the September term, 1930, when he again renewed his former motion for discharge, which motion was again overruled, and the trial resulted in the conviction.

The first point of error is based on the refusal to discharge because three terms had passed since the finding of the indictment without trial, and, as alleged, with no action thereon, and it is argued that the court had no right to enter the *nunc pro tunc* order of May, 1929, showing that all former proceedings were had on the joint indictment, the only charge pending against defendant. There is no merit in this alleged error, and argument. A *nunc pro tunc* order is based on some entry or memoranda on the record or *quasi* record of the court, and not upon oral evidence of some action which should have been put on the record. Recollection will not do unless it is buttressed by a writing of the above character; but here, the record spoke for itself and unequivocally showed that the continuances were upon the only indictment against defendant. They could have been upon no other. The court committed no error in correcting its records, the reason for correction being found upon the face thereof.

The last point of error is based on the giving of the state's instructions Nos. 1 and 2. It becomes necessary to detail the evidence in order to understand the objection to the instructions.

About the middle of July, 1927, in the first part of the week, officers had located "mash" in woods on Laurel Mountain, four or five miles from Belington, and concluded the mash would be ready to convert into liquor about Friday of that week. The sheriff, his deputy, and two members of the state police went into the woods on Thursday night and reached the place of the mash about daylight on Friday morning. It seems that there were two places of operation, one a short distance below the top of the mountain in the brush where there was one barrel of mash which had been partly converted into liquor, some liquor being there found, and a moonshine still nearby; the other mash was in three barrels on top of the mountain. Sheriff Auvil and Hite, a member of the state police, secreted themselves near the three barrels of mash and awaited eventualities. Deputy sheriff McCloud and Wilson, a state policeman, secreted themselves near the barrel of mash and still below the brow of the hill. Some time after daylight, defendant Haller appeared in a

cleared place near the one barrel of mash with a sack on his back which had jars in it, according to the officers' testimony. From there, he went to where the still was located and shortly afterwards his co-indictee, Phillips, arrived. They partially dismantled the still and carried it up to the top of the hill where Sheriff Auvil and Hite were secreted. The sheriff and Hite testified that Phillips came up the hill carrying a sack which he placed near the barrels of mash and went back down the hill. He soon came back accompanied by Haller and made a remark that he had forgot the pipe and went back down the hill. Haller, who carried the boiler, then took it to a spring or stream nearby, washed it, and took it back to the mash barrels when some conversation occurred between him and Phillips (who had returned), as to the quality of the liquor that could be made out of the mash. The two officers then advanced upon them and Phillips ran down the hill in the direction whence he came, but defendant did not run and was placed under arrest. Phillips was arrested in his flight by the officers under the brow of the hill and was immediately brought back to where the others were. The still was complete and was partially set up and one of the officers testified that a fire had been started before the arrest was made. Defendant denied that he had any interest whatever in the still, the mash or the proposed product therefrom. He testified that he was on his way to a neighbor who lived on the mountain to inquire about a stray collie pup which he had lost, and that he made arrangements to meet Phillips on the way who was going with him. He denied that he had any knowledge of the existence of the still or mash; that he met Phillips near the path which led up the mountain and on their way discovered the still; and that Phillips proposed that they take the still and hide it at another place so that the operators thereof could not find it again; that it was his only purpose to carry the still up the mountain (he admitted that he carried a part) in order to hide it. Unfortunately, he took it to the place where the three barrels of mash were located on the top of the mountain and there washed the boiler and proceeded to set it up at that place, according to the testimony of the officers. He

denied that he had partially set up the still at the three barrels of mash, denied that he had washed the boiler, and denied that he had said that he did not know Phillips when asked who that man was that ran down the mountain. He said that one of the officers ran after Phillips and he thought the inquiry was made to him as to the identity of the officer, and replied that he did not know who that man was. His other evidence simply accounts for his actions the day before and his former efforts to locate the lost Collie pup. The officers said he told them that he was out groundhog hunting that morning. This statement he denied. He denied that he carried a sack, saying it was a coat lined with sheepskin. It also appeared in evidence that he had been arrested a short time before for having moonshine liquor in his house and was convicted on that charge. This evidence went in without objection on his part.

The state's instruction No. 1 reads as follows: "The Court instructs the jury that if they believe from the evidence in this case, beyond a reasonable doubt that a number of persons, the defendant being one, either owned, the still testified about in this case or operated the same, or maintained or possessed the same, or had an interest therein, then you should find the defendant guilty as charged in the indictment in this case." The other instruction defined a moonshine still and told the jury that if they believed from the: evidence beyond a reasonable doubt that defendant owned and operated, maintained or had in his possession or had any interest in the apparatus for manufacturing liquors as charged in the indictment, they should find the defendant, George Haller, guilty. Both of these instructions are binding instructions. We can see no objection to instruction No. 2; but instruction No. 1 simply tells the jury that if they believe that defendant owned, operated, maintained or had an interest in the still then they should find him guilty. The objection to this instruction is that it leaves out the criminal intent of defendant. It would have been good if the jury had been told in the instruction that if they believed from the evidence beyond a reasonable doubt he owned, operated, etc., the still for the purpose of making

moonshine liquor, then they should find him guilty. Such an instruction as here given, leaving out the criminal intent, has been condemned in several of our cases. *State* v. *Edgell*, 94 W. Va. 198, 118 S. E. 144; *State* v. *Moore*, 95 W. Va. 604, 122 S. E. 147; *State* v. *Cirrillo*, 96 W. Va. 253, 122 S. E. 655; and *State* v. *McKinney*, 106 W. Va. 299, 145 S. E. 604, where instruction in that case was held to be good because it included therein the expression "for the purpose of manufacturing moonshine liquor". The attorney general argues that instruction No. 1 was incomplete only, and that its defect of incompleteness was cured by No. 2. He invokes the rule that all instructions must be read together and considered as a whole. But both instructions are binding, and that rule does not apply here. The "incompleteness" of the binding instruction is fatal to its correctness. Which of the two instructions did the jury follow? Did the jury find the defendant guilty simply because he had possession, interest in, etc., as set out in No. 1; or because he had possession, etc., with intent to make moonshine liquor? Clearly, instruction No. 1 was erroneous, and calls for reversal. It practically eliminated the defense. It may be argued that the evidence and circumstances show guilt so strongly that the jury could have found no other verdict, and therefore the instruction, while erroneous, was not prejudicial. *State* v. *Smith*, 97 W. Va. 313, 125 S. E. 90. Defendant's story was not very plausible, but the truth of it was a jury question to be decided by it under proper instructions. *State* v. *Lambert*, 100 W. Va. 377, 130 S. E. 520. We cannot assume the functions of the jury. Whether guilty or innocent, he is entitled to a fair trial. We cannot say what effect instruction No. 1 had on the verdict, and, being erroneous, it is presumed to be prejudicial. For this error, the judgment is reversed, the verdict set aside and a new trial awarded.

*Reversed; verdict set aside; new trial awarded.*