GEORGE SMITH, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA,
DEFENDANT IN ERROR.

99 N. W. 2d 8

Filed November 6, 1959. Nos. 34517, 34604.

*Beatty, Clarke, Murphy & Morgan, Donald W. Peder-sen, Frank E. Piccolo, Jr.,* and *James E. Schneider,* for plaintiff in error.

*Clarence S. Beck,* Attorney General, and *Homer L. Kyle,* for defendant in error.

Heard before Simmons, C. J., Carter, Messmore, Yeager, Chappell, Wenke, and Boslaugh, JJ.

Yeager, J.

In this opinion two proceedings in error from the district court will be considered and a determination made in each of them. As to the first of these, No. 34517, in the district court for Keith County, Nebraska, George Smith, plaintiff in error herein, who will be referred to hereinafter as defendant, was charged by the State of Nebraska by information with five criminal offenses of

burglary. The State of Nebraska is defendant in error and it will be referred to as the State. Each offense was charged in a separate count in the information. The date of all of the alleged offenses was February 23, 1958. A trial was had to a jury. The jury by its verdict found the defendant guilty on each of the five counts. A motion for new trial was duly filed. This motion was overruled and the defendant was sentenced to serve an indeterminate sentence in the State Reformatory at Lincoln, Nebraska, on each count of not less than 2 and no more than 5 years, which sentences should run consecutively and not concurrently. By proceedings in error the defendant seeks a reversal in this court.

The second proceeding involves contentions contained in a second motion for new trial based on alleged newly discovered evidence and that an accomplice who was a witness against the defendant testified falsely on the trial. This motion was also overruled. This case is No. 34604.

The alleged errors which the defendant contends entitle him to a reversal are numerous but all of them do not require separate consideration herein. By assignments of error requiring first attention it is asserted (1) generally that each of the counts fails sufficiently to charge an offense punishable by the laws of the state, and (2) specifically that the allegations are insufficient to confer jurisdiction on the court.

Examination of the information discloses that these two attacks do not apply equally to all of the five counts. As will be made clear later herein the question as to sufficiency of allegations to confer jurisdiction applies to the second, third, fourth, and fifth counts, but does not apply to the first.

By the first count of the information it was sufficiently alleged that the defendant committed the crime charged in that count in the County of Keith and State of Nebraska. The same is not true of the allegations of any

of the other four counts. There is nothing in any one of these four counts, either directly or inferentially, describing the jurisdictional situs of the commission of the alleged offense. It is true that by the allegations in each of these counts the county attorney and his authority are by reference to the first count sufficiently defined and declared, but there is a total failure of reference to the jurisdiction defined and declared therein. The total description of the location of the offense charged in the second count is "into the Chrysler & Plymouth Automobile building occupied by George Buer." In descriptive character and quality the other three of the four counts are the same.

The rule applicable in situations such as this is the following: "An information in a case of felony which lacks any allegation that the crime charged was committed within the jurisdiction of the court is vulnerable to a general demurrer." Poulsom v. State, 113 Neb. 767, 205 N. W. 252. This statement was approved in State v. Furstenau, 167 Neb. 439, 93 N. W. 2d 384.

In McCoy v. State, 22 Neb. 418, 35 N. W. 202, it was said: "* * * it is elementary that to confer jurisdiction upon the court for the trial of an offender the information or indictment must allege specifically that the crime was committed within the jurisdiction of the court." This statement was quoted with approval in State v. Furstenau, *supra*. See, also, Dickens v. State, 139 Neb. 163, 296 N. W. 869; Cowan v. State, 140 Neb. 837, 2 N. W. 2d 111; Sedlacek v. State, 147 Neb. 834, 25 N. W. 2d 533, 169 A. L. R. 868.

The question of the jurisdictional insufficiency of the allegations of the four counts was not raised before or at the trial. However under the decisions of this court that failure constituted no bar to the right of the defendant to present it on appeal to this court. The question of the effect of failure to demur was considered and earlier holdings of this court were reviewed in Nelson v. State, 167 Neb. 575, 94 N. W. 2d 1. In that case, in holding

that failure to demur did not waive the right to raise the question, it was said: "It is the general rule that defects or omissions in the indictment or in the mode of finding the indictment, which are of such a fundamental character as to make the indictment wholly invalid, are not subject to waiver by the accused." See, also, State ex rel. Gossett v. O'Grady, 137 Neb. 824, 291 N. W. 497; Hunt v. State, 143 Neb. 871, 11 N. W. 2d 533.

With specific reference to the right to raise for the first time in error proceedings in this court the question of whether or not the information contained sufficient jurisdictional allegations, it was said in Nelson v. State, *supra:* "We accordingly hold that the defendant by failing to move to quash or demur did not waive the right to raise that issue and that it may be raised in this court for the first time on appeal." In this view the conviction on the second, third, fourth, and fifth counts of the information may not be allowed to stand.

It follows from the conclusion reached with regard to the four counts that the general assertion that the several counts fail sufficiently to charge an offense requires consideration only in relation to the first count since this count is not subject to jurisdictional attack as are the other four counts. The main point of the contention is that the building which it is alleged was broken and entered was not sufficiently described.

It is true that the description contained in the information is lacking in clarity as is also the evidence of identification. It is further true that neither before nor during the trial was the attention of the court called to these deficiencies. Attention was not even called to them directly by motion for new trial. Also here it is not pointed out that this occasioned any surprise to the defendant or that on account thereof he suffered any particular disadvantage.

The determination on this question does not turn however on the question of surprise or disadvantage but upon the question of waiver.

As to waiver, in State ex rel. Gossett v. O'Grady, *supra*, it was said: "The general rule is that, where an objection is not made at the time prescribed by law, the objection is waived. * * * This jurisdiction is fully committed to this rule." Numerous cases are cited in the opinion which support the rule. This statement has been approved in Nelson v. State, *supra*.

In Hunt v. State, *supra*, it was said: "The general rule is that a defect in the manner of charging an offense is waived if, upon being arraigned, the defendant pleads to the general issue, provided the information contains no jurisdictional defect and is sufficient to charge an offense under the law.

"The governing principle is that an information is fatally defective only if its allegations can be true and still not charge a crime.

"An information questioned for the first time on appeal must be held sufficient unless so defective that by no construction can it be said to charge the offense for which accused was convicted." These pronouncements were approved in Nelson v. State, *supra*.

From an examination of the first count of the information in the light of these pronouncements it may not well be said that it was so defective as to permit an attack for the first time in this court in an action for review of the conviction of the defendant.

The next question which will be considered is that of whether or not the court erred in its refusal to grant a new trial and in failure to dismiss for want of proper proof. There are several assignments of error presenting different phases of the subject. The important phases however inhere in the following questions: (1) Did either or both of two motions for new trial on the ground of newly discovered evidence require the granting of a new trial? (2) Should the verdict have been set aside in view of the fact that an accomplice was a witness against the defendant? (3) Was it prejudicial error to admit evidence of other criminal acts of the

defendant, namely that in support of the four counts which have by this opinion been declared invalid, on the trial of the charge contained in the first count? (4) Taken as a whole did the evidence amount to proper proof of the charge?

An examination of the entire evidence adduced and admitted, if proper to be considered in determining guilt or innocence, discloses without question that the court did not err in refusing to dismiss on account of failure of proof. There was proof that the crime was committed. There was testimony of disinterested witnesses that the defendant was at the time in the jurisdiction and in the immediate vicinity. Articles which were taken in the series of crimes committed on the date in question were found on the premises of the defendant. An admitted accomplice gave testimony in detail describing participation in the crime by defendant. This testimony was in proof of all of the elements of the crime.

The defendant contends however that this evidence was insufficient to sustain the conviction. The theory is that the conviction was invalid for the reason that it depended upon the testimony of an accomplice, which he contends was uncorroborated, and which he further contends could not be considered since it has been made apparent by the hearing on motion for new trial that the testimony given by the accomplice on the trial was false.

It is true that after the trial the accomplice repudiated by affidavit his testimony wherein he stated that the defendant participated in the commission of the crime. It is also true that later, also by affidavit, he retracted the repudiation. In this light the defendant relies at least in part on the following from Jahnke v. State, on rehearing, 68 Neb. 181, 104 N. W. 154: "The evidence of an accomplice should be closely scrutinized. If it appears that such witness has willfully sworn falsely in regard to a material matter upon the trial, his evidence

can not be sufficient, if uncorroborated, to support a verdict of guilty."

This statement was specifically modified as follows in Millslagle v. State, 137 Neb. 664, 290 N. W. 725: "The fact that an accomplice has been guilty of wilful false swearing on a material matter is a circumstance that may possibly, in a particular instance and situation, make his testimony unworthy of belief on its face, if it lacks corroboration.

"In the ordinary case, even though the accomplice may have been guilty of a conscious falsehood on a material matter, and even though his testimony is lacking in corroboration, it may not be utterly unworthy of belief on its face, and, in such a situation, the rights of an accused will be adequately protected if the jury are instructed that the testimony of an accomplice should be scrutinized closely for possible motives for falsification, and that where he has wilfully sworn falsely in regard to a material matter they should be hesitant to convict upon his testimony, without corroboration, and that in no case should they convict unless they are satisfied from the evidence, beyond a reasonable doubt, of the guilt of the accused."

It is therefore not now the law of this state that one charged with a criminal offense may not be convicted on the testimony of an accomplice.

Another fallacy of the contention of the defendant is that, contrary to his insistence, there was corroboration of testimony of the accomplice. It is true that the testimony as to the actual commission of the act is not corroborated, but it does not follow that within the meaning of law there was no corroboration.

The defense was that of alibi. The defendant and other witnesses testified that he was not within the jurisdiction at the time the crime was committed. The accomplice testified that he was present and other witnesses whose testimony it cannot well be said was incapable of belief testified that he was seen by them in

the jurisdiction in the immediate vicinity of the crime and in the company of the defendant. The testimony was within the meaning of law evidence corroborative of the testimony of the accomplice.

Definitive of what is meant by corroboration, it was said in Heusser v. McAtee, 151 Neb. 828, 39 N. W. 2d 802: "Where there is a direct conflict in the evidence relating to a material issue, any collateral fact or circumstance tending in any reasonable degree to establish the probability or improbability of the fact in issue is relevant evidence and admissible for consideration of the jury."

This statement does not employ the terms "corroboration" or "corroborative" but the opinion points out that the statement was a characterization of these terms. It follows from this that the answer to the fourth question posed above is that the evidence on which the case was tried was sufficient to sustain a verdict of guilty. This also requires a negative answer to the second question.

The theory involved in the third question is that evidence of other crimes was admitted. The evidence to which reference is made is that given in support of the four counts wherein it has been said herein that no sufficient charge of crime is contained.

The evidence of which complaint is made was of acts committed by defendant and his accomplice, in a series of the same kind and character within a few short hours at most, in a small town with both acting at all times in the furtherance of a common design and purpose.

This being true it must be said that the evidence was admissible under the following rule: "To make evidence of other acts available in a criminal prosecution, some use for it must be found as evidencing a conspiracy, knowledge, design, disposition, plan, or scheme, or other quality, which is of itself evidence bearing upon the particular act charged." Clark v. State, 102

Neb. 728, 169 N. W. 271. See, also, Rice v. State, 120 Neb. 641, 234 N. W. 566; Foreman v. State, 126 Neb. 619, 253 N. W. 898; Stagemeyer v. State, 133 Neb. 9, 273 N. W. 824; Sall v. State, 157 Neb. 688, 61 N. W. 2d 256.

It is urged, as we interpret, that there was no competent evidence of the commission of the crime by the defendant since the only evidence in this respect was that of the accomplice, which evidence the jury was required to reject for the reason that it was demonstrated that he had testified falsely. The evidence of falsity was raised by the second motion for new trial and supported by an affidavit of the accomplice.

It is true that if this evidence of the accomplice is rejected the conviction may not be allowed to stand. There is no other evidence of probative value of acts involved in the commission of the crime.

If it may be said that this evidence is now known to be false it is so known because of the repudiation by affidavit which affidavit was in turn repudiated by a later affidavit.

On the record it is clear that if the testimony of the accomplice was false it was willfully so. The true applicable rule under such circumstances is that the jury may disregard the testimony of any witness who it believes from the evidence has willfully testified falsely.

It is obvious therefore that the jury in this case had the power and duty to determine whether or not to believe the testimony of the accomplice. In the face of an abundance of testimony that the defendant was not in the jurisdiction of the court but was many miles away the jury believed the testimony of the accomplice.

In the light of all of this and after trial, should this court assume to say that the defendant is entitled to have the verdict and sentence vacated? If present appearances are to control then the record made on another trial would be the same as the former one, except that there would be the opportunity to show that

the accomplice had made a statement contrary to his testimony out of court on another occasion. In the light of decisions in cases already cited the ascertainment of what was to be believed would still be for the jury.

As an observation, witnesses, as is well known, may be called and examined at a hearing on a motion for new trial. The accomplice was not called as a witness on the hearing on the motion and no explanation was offered. It should be added that if there was a lack of zeal in this respect the lack should be equally chargeable to the defendant and the State.

It appears proper to say that a verdict of a jury and a judgment of a court based on testimony of a witness surrounded by an oath with its potential in the case of violation in which witnesses are subjected to a customary and rigorous examination and to a searching cross-examination should not be rendered for naught by a mere affidavit of falsity obtained by the losing party from a witness in a suit at law.

In support of that part of his first motion for new trial relating to newly discovered evidence three affidavits were filed the purpose of which was to show that the defendant was not at the scene of the alleged crime but was in another county many miles away. Only one of these has a competent bearing upon this question. It is the affidavit of Clifford Higgins the sum total of its pertinent content being that the defendant was at his home on February 23, 1958, from about 5:30 or 6 p.m. to about 7:30 to 8 p.m. During this period Higgins was present but not thereafter. This was but cumulative of other evidence adduced at the trial.

A rule applicable to motions for new trial on the ground of newly discovered evidence is the following: "A motion for a new trial on the ground of newly discovered evidence is addressed to the sound discretion of the trial court, and ordinarily, unless an abuse of discretion is shown, its determination will not be dis-

turbed." Phegley v. State, 113 Neb. 138, 202 N. W. 419. The conclusion reached in this case is that the trial court did not abuse its discretion in refusing to grant a new trial on the ground of newly discovered evidence.

By an assignment of error the defendant contends that it was reversible error for the court to refuse to grant a continuance requested before the trial. There are a number of reasons why this assignment is without merit, but there is one which is peculiarly applicable. That rule is as follows: "It is within the sound discretion of the trial court to determine under all the circumstances of a particular case whether a continuance is required in the interest of justice. The ruling of the trial court thereon is not reversible error unless an abuse of discretion is shown which is prejudicial to the defendant." Smith v. State, 127 Neb. 776, 257 N. W. 59. See, also, Maher v. State, 144 Neb. 463, 13 N. W. 2d 641; Dolen v. State, 148 Neb. 317, 27 N. W. 2d 264.

By one assignment of error the defendant challenges the sufficiency of instruction No. 2 and by another the giving of instruction No. 11. As to instruction No. 2 no basis for the challenge becomes apparent. The instruction in pertinent part stated, insofar as the remaining count of the information is concerned, that the State charged that George Smith in Keith County, Nebraska, feloniously broke and entered John Deere Implement Company. The statement was purely informative and true. It was not definitive and did not purport so to be. No valid objection to it becomes apparent.

As to instruction No. 11 there is no contention that it contained any erroneous statement. The attack upon it is: "The instruction is too weak—too favorable to the state and not sufficiently definite and positive as to the rights of the defendant in connection with the jury's consideration of accomplice testimony; and it is therefore prejudicially erroneous." The attack is with-

out merit under the following rule: "Where the trial court has instructed generally as to the issues in a criminal prosecution, error can not be predicated on its failure to instruct as to a particular phase of the case, where no proper instruction has been requested by the party complaining." Martin v. State, 67 Neb. 36, 93 N. W. 161. See, also, Frades v. State, 131 Neb. 811, 270 N. W. 314. It is true that an instruction was requested and refused, but the refusal was not assigned as error. The situation therefore, insofar as this case is concerned, is the same as if no instruction had been requested.

In the light of all of the foregoing, the conclusion reached is that as to counts two, three, four, and five the verdict and judgment of the district court be and they are reversed. The further conclusion is that as to count one the verdict and judgment of the district court be and they are affirmed. The conclusion and the observations in the opinion effectually dispose of both proceedings in error.

AFFIRMED IN PART, AND IN PART REVERSED.