STATE OF NEBRASKA, APPELLEE, v. DANIEL THOMAS
MEIS, APPELLANT.

351 N.W.2d 79

Filed June 29, 1984.   No. 83-382.

Richard E. Shugrue, for appellant, and, on brief,
Rodney W. Smith of Peebles & Smith.

Paul L. Douglas, Attorney General, and Lynne R. Fritz, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

Following a trial by jury, Daniel Thomas Meis, the defendant, was convicted of the November 24, 1982, first degree murder of Thomas A. Schuchardt, as well as a felony count of use of a firearm in the commission of a felony. He was sentenced to a term of life imprisonment and a consecutive term of 5 years, with credit having been given for all time spent in jail.

He has appealed to this court, and assigns as error: (1) The insufficiency of the evidence; (2) The overruling of certain of his motions for discovery; and (3) The admission for impeachment purposes of a statement obtained in violation of *Miranda* rights. We affirm.

The facts are relatively simple. Following an afternoon and evening of drinking and an earlier altercation with the victim, the defendant shot and killed Thomas A. Schuchardt with one shot from a .357 magnum pistol. The defendant claimed the shooting was accidental. The State, of course, argues to the contrary. After having been properly instructed, as to which there was no complaint, the jury brought in a verdict of guilty on both counts.

The State offered evidence that would support the conclusion that the defendant made several threatening statements in the bar outside of which the fatal shooting occurred. There was also testimony that the defendant, during this same time, was harassing, pestering, and bothering other patrons. There was evidence that the defendant began to wrestle with the victim, and the bartender asked them to leave. The altercation continued outside, and the victim ended up pinning the defendant against a car owned by one of the patrons. After

the owner of the automobile told them to get off her car, they did. The victim then returned to the bar and the defendant went to his car.

A short time later, the testimony of various witnesses would reveal, a gunshot was heard outside the bar, and the defendant then entered the bar and waved a handgun in the direction of several of the patrons. Again, the bartender ordered him out, and, although the defendant pointed the cocked weapon at the bartender, the defendant did leave. The victim left the bar almost immediately thereafter. Shortly thereafter, another gunshot was heard, and the victim was seen kneeling, fatally wounded. The defendant stated that he did not mean to shoot the victim, but the victim took a swing at him and the gun went off.

From our complete examination of the record, we would state that the evidence would support a conclusion of first degree murder as well as an accidental shooting. We need only say that in determining the sufficiency of the evidence to sustain a conviction, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the jury. *State v. Partee*, 199 Neb. 305, 258 N.W.2d 634 (1977). In other words, it is well established that a jury verdict of guilty will not be overturned on appeal unless it is so lacking in probative force that it can be said as a matter of law that the evidence was insufficient to support it. *State v. Lamb*, 213 Neb. 498, 330 N.W.2d 462 (1983). Such was not the case here.

The trial court overruled motions of the defendant to require the State to furnish copies of all statements taken from every witness whom the State intended to call at the trial, to produce copies of reports of some nine law enforcement officials, and to disclose the prior criminal record of the victim.

Leave was granted the defendant to depose all of the State's witnesses.

The defendant's claim of error as to the so-called suppression of evidence is rooted in *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), which held that the suppression by the prosecution of evidence favorable to and requested by an accused violates due process where the evidence is material to the guilt of the defendant. This holding was amplified in *Moore v. Illinois*, 408 U.S. 786, 794-95, 92 S. Ct. 2562, 33 L. Ed. 2d 706 (1972), in which the Court stated:

> The heart of the holding in *Brady* is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the accused and is material either to guilt or to punishment. Important, then, are (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence.

There is absolutely no showing in the record of the suggested or suspected contents of either the alleged statements or the police reports. These motions were all filed on January 24, 1983, without any recitation that such statements and reports were in fact in existence. The hearing on these motions was held on February 7, 1983. Those proceedings are not included within the bill of exceptions. As authorized by Neb. Rev. Stat. § 25-1140 (Reissue 1979), Neb. Ct. R. 5A(2) (Rev. 1983) provides that is the responsibility of the appellant, or the party urging error, to have included within the bill of exceptions all matters from the record which such "party appealing believes material to issues to be presented to the Supreme Court for review."

The record presented to us does not support a claim that either the favorability or materiality requirement of *Brady* has been met. The defense was granted the right to depose all of the State's wit-

nesses and presumably could have inquired as to the existence of any statements or reports and of their contents. Defendant, in cross-examination of one of the State's witnesses, disclosed that he either knew of or discovered the existence of at least one police report. As stated further in *Moore, supra* at 795, "We know of no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case."

As a general rule, the trial court is vested with broad discretion in considering discovery requests of defense counsel, and error can be predicated only upon an abuse of such discretion. *State v. Fuller*, 203 Neb. 233, 278 N.W.2d 756 (1979). We find no such abuse of discretion here.

We note further that as to the failure to acquire the criminal record of the victim, it is defendant's claim that this was necessary to show that it was the victim who was the aggressor, thereby supporting a defense of self-defense. The problem, however, is that such a defense was entirely contradictory of the defendant's claim throughout the trial, i.e., the shooting was accidental. It is the general rule that in a homicide case a defendant may show the dangerous and turbulent character of the victim only after laying a foundation by evidence tending to show self-defense. *State v. Escamilla*, 195 Neb. 558, 239 N.W.2d 270 (1976).

The defendant's final assignment of error is also without merit. A certain statement made to Deputy Bailey before the giving of *Miranda* warnings was suppressed by the trial court from use as part of the State's case in chief. However, it was utilized on rebuttal for impeachment purposes. There was no claim that the statement was not otherwise voluntary. The jury was properly instructed on that issue, as well as the admonition that such statement was not to be considered as substantive evidence. Relying on *Harris v. New York*, 401 U.S. 222, 91

S. Ct. 643, 28 L. Ed. 2d 1 (1971), this court held that "[a] statement made by a defendant, although inadmissible, due to a failure to comply with *Miranda*, during the state's case-in-chief, is admissible for impeachment purposes." *State v. Bazis*, 190 Neb. 586, 588, 210 N.W.2d 919, 921 (1973).

The judgment of the district court was correct and is affirmed.

AFFIRMED.

CAPORALE, J., participating on briefs.