STATE OF NEBRASKA, APPELLEE, V. LORAY S. SMITH, ALSO KNOWN AS LARIE JOHNS, ALSO KNOWN AS MARLA WILSON, APPELLANT.

361 N.W.2d 532

Filed February 1, 1985.   No. 84-493.

Anthony S. Troia, for appellant.

Paul L. Douglas, Attorney General, and Bernard L. Packett, for appellee.

Krivosha, C.J., Boslaugh, White, Hastings, Caporale, Shanahan, and Grant, JJ.

Caporale, J.

Loray S. Smith, also known as Larie Johns and Marla Wilson, appeals her conviction, following a trial by jury, of the first degree felony murder of Laura LaPointe. Smith assigns as error the trial court's failure to dismiss the charge against her or, in the alternative, to direct a verdict in her favor. We affirm the conviction which resulted in a sentence of imprisonment for life.

The victim's mutilated corpse was found by a passer-by beside the Canyon Road in the Hummel Park area of Douglas County on Monday morning, April 11, 1983. The death was caused by injuries resulting from multiple blows from a blunt instrument to the head and to many other parts of the body. The victim had been a prostitute in Omaha, and after an

investigation by the police, suspicion was focused on four other Omaha prostitutes.

On June 28, 1983, the police began arresting the four suspects. One of these suspects, Geraldine Carr, became the State's primary witness against Smith. Carr's testimony revealed to the jury that she was a prostitute and had also been charged with first degree murder as a result of the same incident. She was awaiting sentence and testified that "no promises of leniency" had been given to her. She then described how she, Smith, and two other prostitutes, Carol Joy and Jo Helen Robertson, first robbed the victim and then beat her to death. Joy's conviction was overturned and the cause remanded for further proceedings in *State v. Joy*, 218 Neb. 310, 353 N.W.2d 23 (1984).

More specifically, Carr testified that at about 10 p.m. on April 10, 1983, a Sunday, she drove to the downtown area of Omaha in order to ply her trade. Smith joined Carr in the latter's automobile and the two sat and talked, being joined a short time later by Joy and Robertson. The four then went to a liquor store, purchased a bottle of brandy to share, and returned to the downtown area. According to Carr, while sitting in her automobile and drinking the brandy, they all decided to "rob us a trick." While this discussion was going on, the victim walked by. Smith then called the victim over to the automobile and asked how business had been. When the victim replied that she had had "four or five dates," the four looked at one another, from which Carr "assumed that we could rob" the victim. Smith then invited the victim into the automobile. The victim entered and sat in the back seat between Joy and Robertson.

After Carr drove away from the downtown area, Robertson told the victim that she was being robbed. When the victim replied she had no money, Robertson made her take off her coat and jeans and proceeded to look through them. Joy then checked the victim's clothes, followed by Carr and Smith. During this search, Joy found $25, which Carr snatched, giving Joy $5 and keeping $20 for herself. Robertson took a necklace from the victim, obtained a razor from Joy, and began cutting the victim's hair.

Carr further testified that after the victim told Robertson she had some more money in her hotel room, Joy and Smith got out of the automobile to search the room, but they became frightened and returned to the vehicle before they had made any search. Following this unsuccessful attempt to obtain more money, Robertson began hitting the victim, who then told Robertson if the hitting stopped she would "turn a trick" and give the money to Robertson. Robertson left the car but was unsuccessful in locating a "trick."

Carr further testified that Robertson made the victim perform an act of oral sex on Joy while Carr, Smith, and Robertson watched from the front seat. While this activity was in progress, Robertson hit the victim on the head with Joy's razor, causing the victim to bleed. Carr slapped the victim across the face for bleeding in her car and then gave the victim a blanket to stop the bleeding.

On the way to Hummel Park another bottle of brandy was purchased, but Carr could not remember who went into the liquor store to buy it. They reached Hummel Park after 1 a.m. Once at the park, all five got out of the automobile. Robertson then began hitting the victim, grabbing from Carr the stick which Carr had planned to use for that purpose. Carr also testified that Smith was holding the brandy bottle and said she was going to hit the victim with it. Smith never did this, however, since at Carr's suggestion Carr and Smith got back into the car. Joy then began kicking the victim.

Carr testified that while sitting in the car she asked Smith whether she should leave Robertson, Joy, and the victim. Smith replied that it was Carr's automobile and, therefore, it was up to Carr. Carr did not leave, and Robertson and Joy later got back into the vehicle, leaving the victim in the ditch. Once in the automobile, Robertson and Joy decided they might just as well kill the victim. This time Robertson, armed with a baseball bat, and Joy got out of the car. Robertson beat the victim with the bat, and Joy used the stick. After Joy also beat the victim with the bat, Robertson and Joy got back into the automobile and the four perpetrators started to drive off. They went back, however, so that Robertson could check to see if the victim was dead.

Carr also testified that Smith had thrown out the victim's shoes, jeans, coat, and purse. However, everything but the shoes was retrieved and later disposed of by Smith and the others in a trash dumpster behind a restaurant. The shoes were later found by police near the scene. The perpetrators agreed not to say anything about the incident to anyone.

Smith's testimony was basically similar to Carr's concerning the group's movements, but Smith said that there was no talk of any robbery while she was in the automobile, that she did not assist in any robbery, that she did not view any sexual activity, that she did not attempt to strike the victim with any bottle, that she never got out of the automobile after it became evident that the victim was going to be robbed, and that she never threw out any of the victim's clothing or personal effects.

More specifically, Smith testified that Joy was the one who invited the victim into the automobile, that Smith never got out of the automobile to go into the victim's hotel room, that the reason Smith did not assist the victim was because she was afraid Robertson would harm her, and that Smith did not see much of what went on because after Robertson cut the victim's hair and cut her with the razor, Smith turned around and looked straight ahead. Further, Smith testified that she never searched the victim's clothes and that she never saw Carr get any money.

Obviously, the outcome of the trial depended upon whether the jury believed Carr's testimony or that of Smith.

*State v. Piskorski*, 218 Neb. 543, 357 N.W.2d 206 (1984), quoting *State v. Buchanan*, 210 Neb. 20, 312 N.W.2d 684 (1981), is very clear as to when a trial court may properly direct a verdict of not guilty:

> "It is only where there is a total failure of competent proof in a criminal case to support a material allegation in the information, or where the testimony adduced is of so weak or doubtful a character that a conviction based thereon could not be sustained, that the trial court will be justified in directing a verdict of not guilty."

*State v. Piskorski* at 550, 357 N.W.2d at 212.

Such was not the status of the proof at the close of the State's case. The trial court therefore properly overruled Smith's motions to dismiss the charge against her or, in the alternative,

to direct a verdict in her favor.

*State v. Brennen*, 218 Neb. 454, 356 N.W.2d 861 (1984), reiterates the scope of our review concerning the sufficiency of the evidence. "In reviewing this question we neither determine the plausibility of explanations nor weigh the evidence, such matters being for the trier of fact. The conviction must be sustained if, viewing the evidence most favorably to the State, there is sufficient evidence to support it." *Id*. at 458, 356 N.W.2d at 864-65. *State v. Meis*, 217 Neb. 770, 351 N.W.2d 79 (1984), again teaches that we will not pass on the credibility of witnesses in determining whether there is sufficient evidence to sustain a conviction. "In other words, it is well established that a jury verdict of guilty will not be overturned on appeal unless it is so lacking in probative force that it can be said as a matter of law that the evidence was insufficient to support it." *Id*. at 772, 351 N.W.2d at 82. See, also, *State v. Ruzicka*, 218 Neb. 594, 357 N.W.2d 457 (1984).

Neb. Rev. Stat. § 28-303 (Reissue 1979) is the statute under which Smith was convicted. In pertinent part this section states: "A person commits murder in the first degree if he kills another person . . . (2) *in the perpetration of* or attempt to perpetrate any sexual assault in the first degree, arson, *robbery*, kidnapping, hijacking of any public or private means of transportation, or burglary . . . ." (Emphasis supplied.)

Neb. Rev. Stat. § 28-206 (Reissue 1979) reads: "A person who aids, abets, procures, or causes another to commit any offense may be prosecuted and punished as if he were the principal offender."

Neb. Rev. Stat. § 28-324 (Reissue 1979) provides in part: "A person commits robbery if, with the intent to steal, he forcibly and by violence, or by putting in fear, takes from the person of another any money or personal property of any value whatever."

Applying these statutory standards to Carr's testimony, it follows that if she was believed by the jury, there was sufficient evidence to convict Smith of first degree felony murder. Carr testified that Smith helped plan the robbery and that Smith looked through the victim's clothes. Further, Carr testified that Smith had a brandy bottle in hand ready to strike the victim and

that Smith threw out the victim's clothes at the murder scene, and later, after the clothes were retrieved, helped hide them in a trash dumpster.

*State v. Bradley*, 210 Neb. 882, 317 N.W.2d 99 (1982), holds that it was the intent to commit robbery, not the intent to commit murder, which the State was required to prove in order to convict Smith of felony murder. *Bradley* dealt with a robbery in which the victim was fatally wounded. Bradley, an accomplice who did not do the shooting, was nonetheless convicted of felony murder. We stated that "proof of a purpose to kill is not required because it is not an element of the crime of felony murder. The only intent required is the intent to do the act which constitutes the felony during which the killing occurred." *Id*. at 884, 317 N.W.2d at 101.

To avoid this conclusion Smith argues that the testimony of Carr was insufficient as a matter of law to convict Smith. It is undisputed that Carr's testimony is necessary to sustain Smith's conviction, since Carr is the only witness to indicate that Smith was a participant in the robbery.

Smith contends that Carr gave false testimony, since Carr did not testify either at Smith's preliminary hearing or at a subsequent deposition that Smith had searched through the victim's clothes. Carr's explanation was that on these two previous occasions she was not asked to go into details and was merely giving an outline of what had happened.

Smith cites *Ruzicka v. State*, 137 Neb. 473, 289 N.W. 852 (1940), for the proposition that the uncorroborated testimony of an accomplice who has given false testimony concerning a material matter is, as a matter of law, insufficient to sustain a conviction. See, also, *Jahnke v. State*, 68 Neb. 154, 94 N.W. 158 (1903), *rev'd on rehearing* 68 Neb. 181, 104 N.W. 154 (1905).

This argument fails for two reasons. First, it has not been shown that Carr gave false testimony. From what can be ascertained from the record, the prior statements and the statement given at trial are not contradictory. Carr apparently never testified that Smith had *not* searched the victim's clothes; rather, it appears that that particular detail was first elicited at trial in response to more thorough questioning.

Secondly, even if the statements are viewed as contradictory

and that, therefore, Carr necessarily gave false testimony, the *Jahnke-Ruzicka* rule was specifically reformed in *Millslagle v. State*, 137 Neb. 664, 668, 290 N.W. 725, 727 (1940), *vacated in another respect on rehearing* 138 Neb. 778, 295 N.W. 394, in the following language:

> The fact that an accomplice has been guilty of wilful false swearing on a material matter is a circumstance that may possibly, in a particular instance and situation, make his testimony unworthy of belief on its face, if it lacks corroboration. If such testimony appears on its face to be baldly perjurious or preposterous, and there is no independent evidence upon which a conviction can rest, the trial court should not hesitate to direct a verdict of acquittal. It is not every case, however, that requires this degree of protection. In the ordinary case, even though the accomplice may have been guilty of a conscious falsehood on a material matter, and even though his testimony is lacking in corroboration, it may not be utterly unworthy of belief on its face, and in such a situation the rights of an accused will be adequately protected if the jury are instructed that the testimony of an accomplice should be scrutinized closely for possible motives for falsification, and that where he has wilfully sworn falsely in regard to a material matter they should be hesitant to convict upon his testimony, without corroboration, and that in no case should they convict unless they are satisfied from the evidence, beyond a reasonable doubt, of the guilt of the accused.

See *State v. Eskew*, 192 Neb. 76, 218 N.W.2d 898 (1974); *State v. Bittner*, 188 Neb. 298, 196 N.W.2d 186 (1972), *cert. denied* 409 U.S. 875, 93 S. Ct. 123, 34 L. Ed. 2d 127; *Rains v. State*, 173 Neb. 586, 114 N.W.2d 399 (1962), *cert. denied* 371 U.S. 967, 83 S. Ct. 549, 9 L. Ed. 2d 538 (1963); and *Smith v. State*, 169 Neb. 199, 99 N.W.2d 8 (1959), for later applications of the *Millslagle* rule.

The trial court here properly instructed the jury that the testimony of an accomplice should be closely scrutinized.

The evidence was sufficient at the close of all the evidence to support the jury's finding of guilt, and the trial court therefore

again properly overruled Smith's renewed motions for a dismissal or directed verdict in her favor.

AFFIRMED.