STATE OF NEBRASKA, APPELLEE, V. VICTOR G. TRUE, JR.,
APPELLANT.
460 N.W.2d 668

Filed September 28, 1990.    No. 89-1392.

Richard L. Kuhlman for appellant.

Robert M. Spire, Attorney General, and Donald A. Kohtz for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

Victor G. True, Jr., the appellant, pled guilty in the district court for Dodge County to second degree murder. His plea was entered following an agreement to reduce one charge from first degree murder and dismiss the other charge, use of a firearm to commit a felony. The trial court sentenced him to life imprisonment for the Class IB felony. On appeal, True asserts that his attorney should have been allowed to make copies of any portion of the presentence investigation report and that his sentence is excessive. We affirm.

The incidents which led to True's plea began on April 26, 1989, when the victim, Troy Williams, poured a beer down the back of True's brother-in-law, Peter Saeger. An altercation followed in which Williams allegedly jumped up and kicked

Saeger in the face. Saeger then talked to True, who lived in a basement apartment of Saeger's home. The two decided to find Williams to talk to him about the fight. True is approximately 5 feet 3 inches tall and weighs about 140 pounds, and Williams was approximately 6 feet tall and weighed about 200 pounds.

Upon arrival at a friend's home, True showed the friend the shotgun he had in his car and told him it was intended to scare someone. Another car was outside the friend's home, and True went to see who was in it. As True approached the car, Williams got out of the back seat and confronted True, who then walked toward his own car, reached through an open window, and pulled out the gun. As True pulled the gun up to his shoulder, it discharged, killing Williams.

True told Saeger to leave the area, and True walked to a friend's apartment, where he placed the gun in the trunk of that friend's car. Upon returning to the scene of the shooting to determine the extent of Williams' injuries, True was arrested.

True was initially charged with first degree murder and use of a firearm to commit a felony. On September 27, 1989, the court found beyond a reasonable doubt that the defendant freely, voluntarily, knowingly, and intelligently desired to withdraw his plea of not guilty and granted leave to amend the charge. True then entered a plea of guilty to a charge of second degree murder, and the firearm charge was dismissed.

Prior to accepting the plea, the court advised True that a guilty plea would waive any technical defects or defenses. He was also informed that he was presumed innocent and that he had the right to a speedy trial, to a jury trial, to confront witnesses and his accusers, to present witnesses, to remain silent, and against self-incrimination. After explaining the range of penalties for the crime, the court found that the defendant fully understood his rights; that he waived them freely, voluntarily, knowingly, and intelligently; and that he understood the consequences of waiving his rights.

True contended at the initial hearing that the shooting of Williams was accidental, and the court informed him that he could be found guilty of a lesser offense such as manslaughter. True stated that, because of the possibility that he could be convicted of first degree murder, he was willing to enter a guilty

plea to second degree murder. The court found beyond a reasonable doubt that True did purposely, but without deliberate and premeditated malice, kill Williams and that True was acting voluntarily, freely, and knowingly in entering his plea.

When True and his attorney appeared for sentencing on November 6, 1989, he again contended that the shooting was an accident. The State then offered evidence to demonstrate that the shotgun could not have discharged accidentally.

The request by True's attorney to mark the presentence investigation report as an exhibit was denied by the court, which noted that the presentence investigation is available to the Supreme Court for its consideration on appeal, whether it is marked as an exhibit or not. See Neb. Ct. R. of Prac. 16B (rev. 1989). True's attorney then requested copies of transcriptions of taped statements from the report. The court noted that counsel would not be allowed to photocopy the presentence report, but was granted access to the report at the probation office at any time.

The court found that the killing was a senseless act which was unnecessary and intentional, and sentenced True to life in prison.

A presentence investigation report is provided for by statute. Neb. Rev. Stat. § 29-2261 (Reissue 1989). Subsection (6) of that section governs access to the presentence report:

> Any presentence report or psychiatric examination shall be privileged and shall not be disclosed directly or indirectly to anyone other than a judge, probation officers to whom an offender's file is duly transferred, or others entitled by law to receive such information. The court *may permit inspection* of the report or *examination of parts* thereof by the offender or his or her attorney, or other person having a proper interest therein, whenever the court finds it is in the best interest of a particular offender. The court may allow fair opportunity for an offender to provide additional information for the court's consideration.

(Emphasis supplied.)

We have previously held that this statute "makes the

inspection of a presentence report by the defendant's attorney discretionary with the trial court. However, this is a discretion which may be reviewed in this court." *State v. Keller*, 195 Neb. 209, 211, 237 N.W.2d 410, 412 (1976).

In a U.S. Supreme Court case in which parts of a presentence report were not disclosed to the defendant or his counsel, the Court held:

> [T]he sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause. Even though the defendant has no substantive right to a particular sentence within the range authorized by statute, the sentencing is a critical stage of the criminal proceeding at which he is entitled to the effective assistance of counsel.

*Gardner v. Florida*, 430 U.S. 349, 358, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977).

We are cognizant of the critical nature of the information provided in the presentence report and of its importance in the sentencing process. The report has traditionally been held to be confidential for the protection of the public and the defendant. Identification of or statements of confidential informants may be included. We are also aware that an attorney may seek to review the contents of the report with the defendant in order to determine the validity of the information contained in it. By allowing the attorney to have access to the presentence report only in the probation office or in the judge's chambers at a time when the defendant is incarcerated, the burden is on the attorney to discuss the report with his or her client based only on notes or memory.

We hold that the better policy would be to allow the defendant to examine the presentence report with his or her attorney, subject to the court's supervision. Prior to such examination, the court may review the document in camera and redact any information deemed to be confidential or privileged.

In the present case, however, True has not demonstrated that he was prejudiced in any way by the refusal to provide copies of the presentence report. At oral argument True's counsel conceded that his primary goal was to obtain copies of the statements made to police immediately following the shooting,

which were made a part of the presentence report. True's counsel could have requested discovery of the police reports from the prosecution. While this court, in *State v. Meis*, 217 Neb. 770, 351 N.W.2d 79 (1984), has held that there is no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work in the case, certainly the information would have been discoverable under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), if it was exculpatory or material to his defense. Apparently, counsel believed that the pursuit of such discovery would delay the case and irritate the judge.

True asserted at the time he entered his plea and at the sentencing hearing that the shooting was accidental. Yet he still voluntarily entered a plea of guilty to second degree murder, an element of which is intent. ("A person commits murder in the second degree if he causes the death of a person intentionally, but without premeditation." Neb. Rev. Stat. § 28-304(1) (Reissue 1989).) True now asks this court to find that the shooting was accidental, a defense which could have led to a charge of manslaughter rather than second degree murder. See Neb. Rev. Stat. § 305(1) (Reissue 1989). True waived any defenses when he entered his plea. This court does not resolve conflicts in evidence, pass on credibility of witnesses, determine plausibility of explanations, or weigh evidence. *State v. Methe*, 228 Neb. 468, 422 N.W.2d 803 (1988); *State v. Blair*, 230 Neb. 775, 433 N.W.2d 518 (1988).

Since the trial court twice heard the defendant's contention that the shooting was accidental and had before it the very reports which counsel suggests sustained that contention, no prejudice resulted. If some other harm resulted, True has an obligation to explain to this court what would have been done differently in his case had he and his attorney had access to copies of the presentence report. He has not met that duty. His first assignment of error is without merit.

True's second assignment of error claims that the sentence of life imprisonment is excessive and an abuse of discretion. Second degree murder, a Class IB felony, is punishable by a minimum of 10 years' imprisonment and a maximum of life

imprisonment. Neb. Rev. Stat. § 28-105(1) (Reissue 1985). We have repeatedly held that a sentence imposed within the limits prescribed by statute will not be set aside as excessive absent an abuse of discretion by the sentencing judge. *State v. Ladehoff*, 229 Neb. 111, 425 N.W.2d 352 (1988). See, *State v. Zaritz*, 235 Neb. 599, 456 N.W.2d 479 (1990); *State v. Beins*, 235 Neb. 648, 456 N.W.2d 759 (1990). In determining a sentence, the trial judge should consider factors such as the defendant's age, mentality, education, experience, social and cultural background, past criminal record, and motivation for the offense and the nature of the offense. *State v. Thomas*, 229 Neb. 635, 428 N.W.2d 221 (1988).

The trial court here found that the shooting was a senseless, unnecessary act. True seems to argue that his sentence is excessive because his victim had a reputation as a fighter and had prior convictions. That argument is frivolous. Also, True has previous convictions as a juvenile for breaking and entering and burglary, and convictions as an adult for burglary and possession of a controlled substance. No abuse of discretion is evident in the life sentence. The second assignment of error is also meritless.

The judgment of the district court is affirmed.

AFFIRMED.