9 F.3d 695
 Daniel Thomas MEIS, Appellant,
v.
WYOMING DEPARTMENT OF CORRECTIONS; Unknown Shillenger,
Warden, Department of Corrections; Jack L.
Falconer, Director; Robert M. Spire,
Attorney General for the State
of Nebraska, Appellees.
 No. 92-3893.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 16, 1993.
Decided Nov. 15, 1993.
 
 Robert B. Creager, Lincoln, NE, argued, for appellant.
 Alfonza Whitaker, Asst. Atty. Gen., of Lincoln, NE, argued, for appellees.
 Before McMILLIAN, WOLLMAN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
 WOLLMAN, Circuit Judge.
 
 
 1
 Daniel T. Meis appeals from the district court's[1] denial of his habeas corpus petition filed pursuant to 28 U.S.C. Sec. 2254. He argues that his first-degree-murder conviction was not supported by sufficient evidence, that a suppressed statement was improperly used to impeach him, and that he was denied effective assistance of counsel. Finding all his claims meritless, we affirm.
 
 I.
 
 2
 Following an afternoon and evening of drinking on November 23, 1982, Meis went to the Dew Drop Inn, a bar in Neligh, Nebraska. While at the Dew Drop, Meis physically and verbally harassed several patrons. After insulting one female patron, Meis wrestled with her companion, Tom Schuchardt. After the altercation, Meis went to his car and returned to the bar, brandishing a .357 magnum pistol. He waved the gun around and threatened that he was going to shoot someone. At one point, he aimed the gun in Schuchardt's direction. When asked by the bartender to leave, Meis pointed the gun at the bartender's head. After the bartender told Meis that he was going to call the police, Meis left the bar. The bartender then announced that it was closing time, whereupon Schuchardt also exited the bar. Within a minute, a gunshot sounded from outside the Dew Drop. Schuchardt was found fatally wounded by a .357 hollow-point bullet. No one witnessed the shooting. After being taken into custody at the scene, Meis told a police officer that "he tried to choke me, so I had to blow him away."
 
 
 3
 Meis testified that he had accidently fired the gun while Schuchardt had him down and was choking him. The jury convicted Meis of first-degree murder and of using a firearm to commit a felony. The Nebraska Supreme Court affirmed his convictions on direct appeal, State v. Meis, 217 Neb. 770, 351 N.W.2d 79 (1984), and twice affirmed the denial of post-conviction relief, State v. Meis, 223 Neb. 935, 395 N.W.2d 509 (1986); State v. Meis, 233 Neb. 355, 445 N.W.2d 610 (1989).
 
 
 4
 Meis filed this petition for habeas corpus relief. Adopting in part and rejecting in part the magistrate judge's recommendation, the district court denied the petition.
 
 II.
 A. Insufficient Evidence Claim
 
 5
 Meis first argues that the evidence was insufficient to support his first-degree-murder conviction. To be entitled to habeas relief on this claim, Meis must show that, reviewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Applying this standard, we find that the State presented sufficient evidence to establish that Meis had committed premeditated murder.
 
 B. Improper Impeachment Claim
 
 6
 Prior to trial, Meis argued that his "I had to blow him away" statement should be suppressed because it had been made involuntarily and elicited in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1964). Without making an express finding concerning whether the statement had been voluntarily given, the trial court ruled that the State could not use the statement as direct evidence in its case-in-chief. The prosecutor used the statement on cross-examination of Meis, however, to impeach his testimony that he had accidently shot Schuchardt.
 
 
 7
 A statement by a defendant in circumstances violating the strictures of Miranda v. Arizona is admissible for impeachment purposes if the statement was made voluntarily. Mincey v. Arizona, 437 U.S. 385, 397-98, 98 S.Ct. 2408, 2416-17, 57 L.Ed.2d 290 (1978). The trial court's finding that the statement was voluntary must appear "from the record with unmistakable clarity." Id. at 397 n. 12, 98 S.Ct. at 2416 n. 12 (quoting Sims v. Georgia, 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593 (1967)).
 
 
 8
 Meis argues that the suppressed statement should not have been admitted to impeach him because the trial court failed to make a specific finding that the statement had been made voluntarily.
 
 
 9
 As subsequent proceedings established, had the trial court made a specific finding at trial, it would have found that Meis had given the statement voluntarily. During Meis's second post-conviction proceeding, the judge who had presided at Meis's trial stated that his admission of Meis's statement for impeachment purposes constituted an independent determination by him that the statement had been voluntarily made. Bill of Exceptions, Proceedings before the Honorable Merritt C. Warren, Judge, on September 6, 1988, Vol. I at 7. This after-the-fact recordation of a finding of voluntariness, when viewed in the light of the fact that Meis neither alleges nor points to any evidence that the statement was given involuntarily, is sufficient to satisfy the requirements of Mincey and Sims.
 
 C. Ineffective Assistance of Counsel Claim
 
 10
 Meis next argues that he was denied effective assistance of counsel at trial. To establish an ineffective assistance claim, a defendant must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Counsel's performance is deficient if "counsel's representation [falls] below an objective standard of reasonableness." Id. at 688, 104 S.Ct. at 2065. Counsel's performance prejudices an individual's defense if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. at 2068.
 
 
 11
 Meis contends that his counsel was ineffective because he failed to object during closing argument to the prosecutor's mischaracterization of testimony concerning the amount of trigger pressure needed to fire Meis's pistol. We find that counsel's decision not to object was reasonable. Whether to object during closing argument to a slight mischaracterization of evidence is a strategic decision that deserves deference.
 
 
 12
 Meis next claims that trial counsel was ineffective because he failed to advise him concerning the option of resting without offering any evidence. More particularly, Meis argues that counsel should have more thoroughly explained the consequences of testifying.
 
 
 13
 After holding an evidentiary hearing on this issue, the magistrate judge recommended granting Meis habeas relief on this claim. The district court found, however, that defense counsel had not been ineffective and rejected the magistrate judge's recommendation.
 
 
 14
 Before Meis testified, the following conversation occurred between Meis and his counsel.
 
 
 15
 COUNSEL: Dan, have you and I had conversations related to your taking the stand to testify in your own behalf?
 
 
 16
 MEIS: Yes, we have.
 
 
 17
 COUNSEL: Do you understand that you still have the right not to take the stand?
 
 
 18
 MEIS: Yes, I do.
 
 
 19
 COUNSEL: Do you understand that the attorneys for the State cannot comment about the fact that you did not take the stand in your own behalf?
 
 
 20
 MEIS: Yes, I do.
 
 
 21
 COUNSEL: Do you understand the presumption of innocence is with you?
 
 
 22
 MEIS: Yes, I do.
 
 
 23
 COUNSEL: Do you understand that the Court will give an instruction that should you elect not to take the stand, that the jury cannot consider that against you?
 
 
 24
 MEIS: Yes.
 
 
 25
 COUNSEL: Do you understand that if you take the stand that you subject yourself to cross-examination by the attorneys for the State of Nebraska?
 
 
 26
 MEIS: Yes, I do.
 
 
 27
 COUNSEL: Do you understand that you also subject yourself to impeachment wherein they can, if appropriate, could introduce evidence of prior felony convictions or misdemeanor convictions which go to your veracity, your truthfulness?
 
 
 28
 MEIS: Yes, I do.
 
 
 29
 COUNSEL: You're aware of the fact that there is a statement that has been suppressed pursuant to a decision in Miranda case that cannot be used against you as evidence, but that--do you understand that although the Court has not ruled on the issue, that the law would support that that statement could be used against you to impeach your veracity by the State in the event that you take the stand and testify?
 
 
 30
 MEIS: Yes, I do.
 
 
 31
 COUNSEL: Have we discussed each of these points at length?
 
 
 32
 MEIS: Yes, quite.
 
 
 33
 COUNSEL: Do you understand them?
 
 
 34
 MEIS: Yes, I do.
 
 
 35
 COUNSEL: Based on discussions with counsel and the situation of the case, is it your position at this time that you wish to take the stand and testify?
 
 
 36
 MEIS: I'll take the stand.
 
 
 37
 COUNSEL: Okay. Is that decision made freely?
 
 
 38
 MEIS: Yes, it is.
 
 
 39
 Bill of Exceptions, Transcript of Jury Trial of March 15-19, 1983, Vol. IV at 522-24.
 
 
 40
 We agree with the district court's finding that counsel adequately explained to Meis the implications of testifying and of not testifying. Although counsel might have more thoroughly explained the option of resting without presenting a defense, we cannot find counsel's conduct constitutionally unreasonable. In Strickland, the Supreme Court cautioned courts to exercise restraint in reviewing the performance of counsel.
 
 
 41
 Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.
 
 
 42
 Strickland, 466 U.S. at 689, 104 S.Ct. at 2065 (citation omitted).
 
 
 43
 Furthermore, Meis has not shown that the trial's outcome probably would have been different even if he had been more completely advised about not testifying. As the district court found, Meis probably would have chosen to testify no matter what counsel had said. It appears that from the beginning of his case Meis wanted to tell the jury his side of the story, which was that he had accidently shot Schuchardt during a struggle.
 
 
 44
 Likewise, we also reject Meis's arguments that counsel failed to adequately advise him concerning other potential defenses. We believe that counsel sufficiently explained the possible defense alternatives to Meis.
 
 
 45
 Finally, Meis argues that trial counsel was ineffective because he failed to effectively cross-examine FBI agent Donald Havekost, who testified that there was no gunpowder residue on Schuchardt's hands, which indicated that Schuchardt's hands were not within one foot of the firearm when it was fired. Meis argues that effective cross-examination would have discredited Havekost's testimony by establishing that Schuchardt's hands may have been contaminated with blood after the shooting and that the blood had been washed from his hands by medical personnel, thus rendering Havekost's neutron activation analysis invalid.
 
 
 46
 Whatever the reasonableness of defense counsel's decision not to cross-examine Havekost more extensively, we conclude that Meis has not established that there is a reasonable probability that the result of the proceeding would have been different had Havekost's testimony been discredited. As the Nebraska Supreme Court observed in its initial opinion denying Meis post-conviction relief, Havekost's testimony was consistent with Meis's version of the shooting. State v. Meis, 223 Neb. 935, 395 N.W.2d 509, 514. The absence of gunpowder on Schuchardt's hands was supportive of Meis's testimony that Schuchardt was choking him at the time the weapon was discharged, for it is unlikely that Schuchardt's hands would then have been in a position to have been contaminated by the weapon's blast.
 
 
 47
 The district court order denying habeas relief is affirmed.
 
 
 
 [1]
 The Honorable Warren K. Urbom, Senior United States District Judge for the District of Nebraska